EX PARTE WILLIAM NIGHTINGALE—UPON HABEAS CORPUS.

1. A prosecution for crime must be conducted in the name and by the authority of the State of Florida. .

2. A judgment authorized by a statute which creates the debt upon which it is based, and which is entered in favor of a person whose suit or demand the defendant has not been summoned to answer, is void.

The opinion of the court contains a statement of the case.

*C. W. Jones,* for Petitioner.

*C. C. Yonge,* for Sheriff.

WESTCOTT, J., delivered the opinion of the court:

The petitioner, William Nightingale, having filed his petition with one of the justices of this court alleging that he was detained in custody without lawful authority by George E. Wentworth, sheriff of Escambia county, a writ of *habeas corpus* was granted returnable to this term. The writ has been returned, and " the cause of the detainer of the prisoner," as certified by the sheriff, is an order of the judge of the county court of Escambia county in the words following:

Commissioners of Pilotage of the Port of Pensacola vs. WILLIAM NIGHTINGALE—Fraud.

This case coming on for examination, the accused, William Nightingale, came into court in the custody of the sheriff, and was thereupon arraigned and pleaded not guilty as charged in the commitment.

Whereupon the court, after hearing the evidence and argument of counsel, does consider and order that the accused, William Nightingale, be held upon his recognizance in the sum of

five hundred dollars to appear at the next term of this court, in default of which he be committed to jail.

Accompanying this return is a transcript of the record of the proceedings of the county court. This record, and an affidavit disclosing the fact that petitioner was a foreigner, being filed, the case was submitted upon this evidence after argument.

From this record it appears that the petitioner was charged before the Board of Pilot Commissioners of Pensacola with a violation of the act entitled " An Act authorizing the Board of Commissioners of Pilotage to appoint Stevedores, and for other purposes," approved July 31, 1868.

The first section of this act authorizes the Board of Pilot Commissioners to grant commissions and licenses to such number of competent and trustworthy persons as they may deem necessary after examination.

The second section provides the time for which they shall hold their offices, and requires a bond.

The third section provides that " no person shall receive a commission as stevedore, or exercise the duties of a stevedore, unless he be a citizen of the United States and of the State of Florida, nor shall any person be allowed to contract for the loading of any vessel or vessels in any of the ports or harbors of this State, unless so commissioned and licensed, and any person found violating the intent and meaning of this act, shall be guilty of a fraud, and shall be adjudged to be *indebted* to the Board of Commissioners of Pilotage in the sum of three hundred dollars, and the court shall enter judgment therefor, with costs, in favor of said Board of Commissioners of Pilotage, and if such judgment shall not be paid within ten days after judgment is entered, during which time the accused shall remain in custody, execution may be issued therefor commanding the sheriff to levy the amount thereof out of the property of the person against whom such judgment was rendered, and if sufficient property cannot be found to satisfy the same, then to take his

body and him safely keep in the county jail of said county until said judgment and costs be paid." The other sections provide that in case the judgment is paid, one half shall go to the informer; that neither the State nor county shall be responsible for costs; that upon complaint upon oath charging a violation of the act, an arrest and examination shall follow, and such offense appearing to have been committed, a commitment in default of bail shall issue, and that the county court shall have jurisdiction to try all cases arising under the act, which shall be conducted in the same manner as trials for misdemeanors.

It appears that the petitioner not having been commissioned or licensed as a stevedore in and for the port of Pensacola, was charged with having contracted for the loading of the British barque Conway, then in port, and with being then engaged in loading the said barque, contrary to the intent and meaning of the act referred to.

An inspection of the record discloses that after the charge was made to the pilot commissioners, these proceedings were instituted in the county court by them, and that the prosecution was conducted in the name of the Board of Commissioners of Pilotage of Pensacola.

This is expressly in conflict with the 2d Sec. of Art. VI. of the Constitution of this State, which requires that "all prosecutions shall be conducted in the name and by the authority of the State of Florida."

This clause, which is to be found in most if not all of the Constitutions of the States which took part in the formation of the government, was inserted to exclude the idea that any other, either local authority or foreign power, should exercise this authority of prosecuting for crimes under State laws. It was to assert the sovereignty and supremacy of the State in matters of this kind.

In the case now before us, this authority is assumed by the Board of Pilot Commissioners, the prosecution is expressly in their name, and to recognize it as constitutional would be tanta-

mount to constructing an *imperium in imperio*, and to vest in this board a power which the people by the Constitution have expressly confided alone to the "State of Florida." 5 Howard, Miss., 5 ; 2 Bibb., 210.

The provision that " any person found violating the intent and meaning of this act shall be guilty of a fraud, and shall be adjudged to be indebted to the Board of Commissioners of Pilotage in the sum of three hundred dollars, and the court shall enter judgment therefor, with costs, in favor of said Board of Commissioners of Pilotage," construed with reference to the other sections, must fix the character of this very strange law. What is the meaning of the clause " shall be guilty of a fraud " ? It is unusual in a statute to provide that a party having done certain acts shall be guilty of *a* larceny, or other crime. The use of the article *a* in such a connection, would indicate the purpose of the Legislature to create a new class of crimes, of which this defined here was to be the first. If we would give the clause the same signification which we would if the word felony or misdemeanor stood in the place of the word fraud, such must be the necessary effect of the language. Gross frauds and cheats were punishable at common law, but no such distinct crime was known as " fraud."

The Constitution of this State classifies crimes under the heads of felonies and misdemeanors, in granting power to the several courts to be organized under it. Their jurisdiction is defined and limited with reference to these heads of crime ; no jurisdiction is provided for a new class of crimes to be called " frauds," instead of felonies or misdemeanors, and looking at this statute in this view the question arises, can the Legislature create a new class of crimes to be called frauds, and the courts take jurisdiction under such a legislative grant of power ?

The county court shall have "jurisdiction of all misdemeanors," and the circuit court "jurisdiction in all criminal cases amounting to felony," is the language of the Constitution. This may be a strange view to take of the statute, but it is a

.statute *sui generis,* and we desire to look at it in every aspect.

Another view to be taken of this statute, and this was, perhaps, the intention of the Legislature, is that the word "fraud," as here used, indicates a new crime to be known as "fraud," which consists of contracting to load a vessel without a license as stevedore, and that it is a felony or misdemeanor, as its nature and incidents shall indicate.

Under this construction, the statute first creates a new crime which is a misdemeanor, that must be prosecuted in the name of the State as a misdemeanor, and the trial "conducted according to the provisions of law relating to the trial of misdemeanors." The result of conviction is that the party guilty of the fraud shall be adjudged *indebted* to the Board of Commissioners of Pilotage in the sum of three hundred dollars, and the court shall enter judgment for the debt of the party to the Board of Pilot Commissioners in favor of the board, and shall award costs incurred in a prosecution by the State to them.

Thus we have, in the first place, a criminal prosecution on the part of the State resulting in creating a debt not mentioned or alluded to in the prosecution in favor of the Board of Pilot Commissioners, a third party whose suit or demand the prisoner has never been summoned to answer, and in the second place, upon this debt thus being established, the court, without any further process of law or notice, awards a judgment in favor of this third party for the debt thus arbitrarily established, as well as for costs incurred in a prosecution by the State of Florida against him, to which this board is no party.

In 2 Fla., 112, it is held that "where consequences in violation of common reason, common right, and the principles of common justice arise even collaterally out of a statute, it is void *pro tanto;*" and this doctrine, if correct, might well be invoked here, for such results are certainly contrary to common sense, reason, and justice. We need not resort to this doctrine, however.

If the debt can be thus established (upon which we express no opinion), it cannot be thus reduced to judgment. This can only be done after notice and trial, and the Legislature, even admitting for the sake of argument that it can arbitrarily create a debt as distinct from a penalty, fine, or forfeiture, cannot arbitrarily enact that a debt of A to B shall be a judgment. We know of no such power in the government. In the expressive language of an eminent jurist, " that is not legislation which adjudicates in a particular case, prescribes the rule contrary to the general law, and orders it to be enforced. Such power assimilates itself more closely to despotic rule than any attribute of government." 4 Harris, 206.

This act, under a still different construction, might be held to be a penal statute, and the three hundred dollars a forfeiture or penalty to be recovered by the commissioners in an action of debt upon the statute, if its provisions did not indicate that there was to be a criminal trial, as in cases of misdemeanor, and the result of conviction, the establishment of a debt, and immediately a judgment in favor of a third party.

In this aspect another question would arise, viz.: whether the Board of Pilot Commissioners could recover the penalty or forfeiture in the face of the constitutional requirement that " all fines collected under the penal laws of this State " shall go to the common school fund. Sec. 4, Art. VIII.

The matter arising upon the petition, and the return of the sheriff to the writ of *habeas corpus* issued herein, having been argued by counsel for the petitioner, as well as by counsel for the return, and it appearing that there is not sufficient legal warrant for the arrest and detention of the prisoner shown in the return of the sheriff, and no other or further cause for his detention being shown, it is ordered that the said William Nightingale be discharged from said imprisonment, and that he go hence without day.