THE STATE OF FLORIDA *ex rel.* JOHN ANDREU *et als.*,
PLAINTIFFS IN ERROR, VS. HETH CANFIELD *et als.*,
COMPOSING THE CITY COUNCIL OF THE CITY OF
ST. AUGUSTINE, DEFENDANTS IN ERROR.

Appellate Practice—Constructive Service on Defendants in Error
by Recording Writ of Error—Chapter 4529, Laws of 1897, Con-
stitutionally Upheld and Construed—Mandamus Against City
Council—Writ of Error Must Be Sued Out in Names of All
Joint—Judgment Defendants—Original Writs of Error Must
Be Returned to Appellate Court.

1. Chapter 4529 laws, approved May 8th, 1897, entitled: "An
act to abrogate the writ of *scire facias ad audiendum errores* in
appellate proceedings to the Supreme Court, and to provide a
substitute therefor in civil causes," *held* to be not obnoxious to
that provision of the constitutions of the United States and of
the State of Florida that forbids the deprivation of property with-
out due process of law. Our Legislature has the power, not only
to regulate and prescribe the procedure to obtain in our several
courts, respectively, but also to regulate and prescribe the proce-
dure by which causes tried in the courts of *first instance* shall be
*transferred for review* to other tribunals clothed by the constitution
with revisory powers; and when, in so doing, it provides that the
*issuance and record of a writ of error* in the court of first instance
shall have the effect of transferring the cause and *the litigants*
therein to the jurisdiction of the revising court for re-examina-
tion, it has prescribed that "due process of law" contemplated
by said constitutions. A writ of error proceeding is not such a
new and original suit as to require the same strictness and rigidity
in the service upon the defendant therein of notice of its institu-
tion, as is required at the institution of a new and original
action in a court of *first instance,* but is rather a *continuation* of
an original suit; and a statute providing for *constructive notice*
only of its institution and pendency does not violate that provi-
sion of the organic law that prohibits the deprivation of property
without due process of law. (Mr. Justice Carter dissenting.)

2. Nothing but a *clear* violation of the constitution will justify
the courts in overruling the legislative will; and where there is a

State of Florida ex rel. v. Canfield et als.—Syllabus.

reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act, and it must be upheld.

3. A mandamus against a city council is virtually a proceeding against the corporation, and the judgment therein is obligatory on the members of the board of councilmen in office at the time of its rendition, regardless of mutations made, pending the proceedings, in the personnel of those composing such representative council.

4. Writs of error should in all cases give the *individual names of all parties* plaintiff and defendant in error in order that the appellate court may know by the record who the parties are before it. A writ of error issued in the name of "J. A. *et al.*" is nothing more than a writ issued in the name of "J. A." alone; and where the judgment thus sought to be reviewed is a joint one against "J A." and other co-judgment defendants who are not otherwise named or designated in the writ of error than by the use therein of the abbreviation "*et al.*," such writ is fatally defective for the want of necessary parties plaintiff in error. The settled rule being that all parties defendant to a judgment rendered against them *jointly* must be made parties to a writ of error instituted for its review.

5. A writ of error, amended by bringing into it new parties plaintiff in error, is, as to such new parties, a new writ, issued, at the time of such amendment, for the first time. And this court, according to its established rule, will not permit such amendments to be made after the time limited for suing out writs of error has expired.

6. The provision in Chapter 4529, laws of 1897, requiring the *writ of error to be recorded in the minute-book of the Circuit Court*, is designed as a substitute for the service upon the defendant in error of the abrogated writ of *scire facias ad audiendum errores*, and serves the purpose of *notice to the defendant in error* that he and the record of his case have by such writ been removed for review to the appellate court. It is jurisdictional, and *must in every case be strictly complied with*. The statute does not, however, preclude waiver of notice and voluntary appearance in the appellate court.

7. All original writs of error should be *returned to and filed in the appellate court* with the record in the cause; or, at latest, by the return day named in the writ; and, in view of the provisions of Chapter 4529, laws of 1897, it should in every case have endorsed upon it when returned a certificate of the Clerk of the

Circuit Court showing the fact that it has been *recorded in the minute-book of the Circuit Court,* and the *date of such record* and the page of the book where recorded; and the *transcript of the record* should also contain a *certified copy* of such record of the writ of error, certified by the Clerk of the Circuit Court in the same manner that he authenticates any transcript of any other document of record in his office, having such copy to show also the *date of its record in his minute-book.*

Writ of Error to the Circuit Court for St. Johns County.

The facts in the case are stated in the opinion of the court.

*Alex. St. Clair-Abrams,* for Plaintiffs in Error.

*Parrott & Hamlin and W. A. McWilliams,* for Defendants in error.

TAYLOR, C. J.:

This cause comes here by writ of error from a final judgment in a mandamus proceeding rendered in the Circuit Court of St. Johns County on the 8th day of July, 1897. The writ of error therein was issued by the Clerk of the Circuit Court on the 29th day of November, 1897, and was recorded on the same date by the Clerk of the Circuit Court in the minute-book of said Circuit Court, and is returnable to the first day of the present term of this court.

The defendants in error, respondents below, now move this court, on special appearance for that purpose alone, to dimiss the writ of error on the following grounds: 1st. Because said writ of error does not contain the names of the plaintiffs and defendants in error. 2nd. Because there has been and is no service or notice of said writ or this appeal as required by law upon the

State of Florida ex rel. v. Canfield et als.—Opinion of Court.

respondents named in the petition for and the alternative writ issued in the court below herein, and in favor of whom judgment was rendered, as shown by the transcript of record herein, and this court has acquired no jurisdiction of such defendants. 3rd. Because this court has not by virtue of said writ or of any proceeding or notice herein, or in the court below, obtained jurisdiction of the subject-matter of the suit or any of the defendants in error herein. 4th. Because by Chapter 4636 of the acts of the Legislature of the State of Florida, approved May 3rd, A. D. 1897, the respondents below, who comprised the city council of the city of St. Augustine under and by virtue of Chapter 3972 of the said acts, approved June 3rd, 1889, ceased to exist as a council, or to represent said city in any capacity, upon the election of a city council pursuant to said Chapter 4636, which occurred on the 15th day of June, A. D. 1897, and upon said council being duly qualified and sworn in on the 18th day of June, A. D. 1897, and said city or new city council never having been made parties to this proceeding in the court below, the judgment below did not affect either the city of St. Augustine or its city council at the time or now existing, and neither are now nor can be brought herein before this court, nor can this cause properly be prosecuted against said former city council, who were respondents below, because at the time the judgment appealed from was rendered, said council was *functus officio*, and any further or other prosecution would be and is fruitless. 5th. Because in view of said Chapter 4636, which was in force at the time the judgment appealed from was rendered, and of the parties below no other judgment was or is now possible than that "the respondents go hence without day," as adjudged below, and even if the reasons given therefor by the court below are erroneous, or the motion to

quash was improperly sustained, such errors were with-
out injury to the relators below, and plaintiffs in error
here.   6th.  Because no constructive or other legal ser-
vice of the writ of error herein, or any notice thereof,
has been made upon the existing members of the city
council of the city of St. Augustine, elected pursuant to
said Chapter 4636.   7th.  Because the original writ of
error herein has not been returned to or filed in this
court, or other original evidence shown that the substi-
tuted service or notice prescribed by Chapter 4529 of
the acts of the Legislature of Florida has been complied
with.   8th.  Because of other errors for the committing
of which this writ of error and this cause should be dis-
missed.   Accompanying this motion and in support
thereof is a sworn statement by one P. S. Arnau, to the
effect that he is clerk of the city of St. Augustine, and
that it appears from the records of said city in his cus-
tody that prior to, and up to the 18th day of June, 1897,
the following named persons composed the city council
of St. Augustine, viz:   Heth Canfield, A. J. Watts, W.
S. M. Pinkham, E. W. McBride, J. B. Colee, John Pap-
ino, Alexander Iwanowski, C. J. Vedder, John Center
and T. W. Bruce; that they held such offices under a
former city charter; that under Chapter 4636, laws of
Florida, an election for city councilmen for said city was
held on the 15th day of June, 1897, pursuant to the pro-
visions of said Chapter, and that at said election the fol-
lowing persons were elected as councilmen for said city,
viz:   Heth Canfield, Jesse McClain, E. E. Boyce, Alex-
ander Iwanowski, E. W. McBride, Marion T. Masters,
A. J. Watts, John L. Center, J. B. Colee and C. J. Ved-
der, and that they duly qualified and became the regular
constituted city council of said city on the 18th day of
June, 1897, and have so continued up to the present
time, and that since June 18th, 1897, no other persons

or body of men have perfomed any of the duties or functions of said city council.

Under the second and third grounds of this motion an assault is made upon the constitutionality of the following Chapter 4529 laws, approved May 8th, 1897, entitled: "An act to abrogate the writ of *scire facias ad audiendum errores* in appellate proceedings to the Supreme Court, and to provide a substitute therefor, in civil causes." "Section 1. That from and after the passage of this act it shall not be necessary, in order to give to the Supreme Court jurisdiction over the person of any defendant in error in civil causes, to issue or to serve the defendant in error with a *scire facias ad audiendum errores*, or with any other writ, process or notice, in any civil cause taken by writ of error to the Supreme Court, for the purpose of notifying him of the pendency of such writ of error proceeding; but all writs of error from the Circuit Court to the Supreme Court, in civil causes, shall be recorded by the Clerk of the Circuit Court to whom such writ of error is addressed in the minute-book of his court within ten days after its issuance or receipt by him, and such recording by the clerk of the writ of error shall be deemed, taken and held to be sufficient notice to the defendant in error of the pendency of such writ of error proceeding in the Supreme Court, and the Supreme Court shall thereby acquire complete jurisdiction over the person of such defendant in error." Section two of the same act expressly repeals all former legislation providing for the issuance, service and return of writs of *scire facias ad audiendum errores* in civil cases from the Circuit Courts to the Supreme Court; and the third and last section of the act provides that the act shall take effect immediately upon its approval by the Governor.

It is contended that this law is violative of that pro-

vision of the constitutions of both the United States
and of the State of Florida inhibiting the deprivation of
life, liberty or property without due process of law.    In
support of this contention it is argued that an appeal or
writ of error is a *new suit*, and that if the provisions of
this law are to be enforced, the defendant in error or
appellee is left entirely without notice of the pendency
or existence of such new suit, except such constructive
notice thereof as is furnished in the provision requiring
a record of the writ of error; that as to non-resident liti-
gants such constructive notice is absolutely void if the
judgment rendered by the appellate court is one *in per-
sonam*; and that as to all resident litigants upon whom
personal or actual service can be had, it is also void upon
the ground that no constructive service of process can
ever be legally justified where the parties are resident
within the court's jurisdiction and accessible to personal
service of its process.    These contentions seem to be
supported by some authorities when applied to *initiatory*
process in the courts of *original jurisdiction*,    but    when
such courts have jurisdiction of the subject-matter of a
suit, and, by proper service of their orginal process,
have acquired jurisdiction of the parties litigant and
carry the suit to judgment, the principles contended for
have no application to those further steps or proceedings
in the same cause by which such judgment and
the proceedings antecedent thereto are transferred
to an *appellate* court, not for the purpose of granting any
original relief therein, but solely for the purpose of re-
view and correction if error has been committed by the
court of original jurisdiction.    Upon such transfer the
subject-matter, parties in interest and issues contended
for remain the same.    No new issue, matter or conten-
tion can be infused into the case in the appellate court,
neither can it grant any original relief not claimed in

the court of first institution. Its function is solely that of revision and review of that which has already been done in the lower court. And in the appellate court, it may be said that the acts and doings of the judge below are more directly upon trial than the contentions of the parties litigant in the cause. If error is found by the appellate court to have been committed in any of the proceedings precedent to the judgment rendered by the lower court, its judgment is simply reversed with a remand of the cause to the court of its origin for re-trial of the same issues between the same parties. If error is found in the judgment alone, the appellate court itself may correct that error leaving the judgment as corrected still the judgment of the original court to be enforced by its process. If no error is found either in the proceedings leading up to the judgment or in the judgment itself, the appellate court simply affirms the absence of error and remands the judgment to the lower court for enforcement as the judgment of such lower court, with its full effectiveness dating from the day of its original rendition. It can not accurately be said, then, that an appeal or writ of error proceeding from an inferior to a superior court, having the powers of an appellate tribunal to be exercised in such cases strictly *in review* of proceedings already had between litigants in the lower court, is at all such a *new suit* as that the parties to it should be personally served with separate notice of the taking of those steps or proceedings prescribed by law by which the legal contests between them in the trial courts are removed or transferred to the appellate court for review and correction of error if any has been committed. Under our laws the time within which an appeal or writ of error can be taken in civil causes is now cut down to the short period of six months from the rendition of the judgment or decree to be reviewed.

This statute, coupled with the limitation statute in such cases, provides in effect that for six months after the rendition of any judgment at law in the Circuit Courts it and the proceedings upon which it is founded may be removed and transferred to this the Supreme Court, strictly for review, by the issuance and recording of a writ of error in the minute-book of the Circuit Court where the judgment itself to be reviewed is likewise recorded. The proper issuance and recording of the writ of error removes the record evidencing the proceedings had up to that juncture into the appellate court, and along with it the parties to that record; and, instead of being a new suit, is but a continuation of the same suit, simply another step in the same cause, of the right to take which in regular order in the manner prescribed by this law all parties litigant in the Circuit Courts have full knowledge in advance whenever they voluntarily subject themselves to the jurisdiction of the courts of first instance by becoming parties plaintiff in suits, or are made parties defendant therein by the due service of summons or other original process. The law, we think too, inflicts no unreasonable hardship upon litigants, and in no sense even tends to deprive them of any right without their knowledge, or without full opportunity to be heard. The party recovering a judgment in any of our Circuit Courts knows from our constitution that such judgment is not a finality, but that the party against whom he has obtained it has the right during a limited period to have it reviewed, reversed or corrected by this court, and he knows, too, from this law, on the day of its rendition that for six months thereafter his adversary against whom he has recovered it has the right to remove it for review into the appellate court by simply having a writ of error issued and recorded in the minute-book of the Circuit Court where

State of Florida ex rel. v. Canfield et als.—Opinion of Court.

his judgment stands of record, and he knows that during that six months it is incumbent upon him to watch the records where his judgment is enrolled, lest the step be there taken that will, in course of duly prescribed law, subject the regularity and propriety of his judgment to the revisionary scrutiny of the court provided by the constitution to review and correct errors in same, if any. We have not overlooked the fact that this court has repeatedly heretofore made use of the expressions that "a writ of error was in the nature of a new suit," and "was a new suit and not a continuation of the former suit" (Loring v. Wittich, 16 Fla. 323, text 327; Weiskoph v. Dibble, 18 Fla. 22, text 23; State v. Mitchell, 29 Fla. 302, 10 South. Rep. 746; U. S. Mut. Accident Association v. Weller, 30 Fla. 210, text 215, 11 South. Rep. 786; Glasser, Kuder & Ottensoser v. Hackett, 37 Fla. 358, 20 South. Rep. 532), but an inspection of these cases will show that these expressions were *illustratively* used therein. Neither in these cases nor in any other has this court ever decided that a writ of error was the commencement of such a new and original suit as to make *personal service* of notice of its institution an indispensable essential to the administration of that "due process of law" contemplated by the constitutional inhibition. On the contrary, Rule 25, adopted by this court at its April term, A. D. 1873, for the government of causes pending here, expressly provides for *constructive service* of notice by publication upon the heirs at law or personal representative of parties, either plaintiff or defendant, to pending writs of error who may die, requiring them to become parties to the appellate proceedings, and upon their failure to respond to such notice, recognizes the right of this court to proceed with the determination of the cause. This rule has been in force for upwards of twenty years, and has been frequently acted

upon and its entire propriety has never been questioned. In such cases identically the same practice prevails in the Supreme Court of the United States as prescribed by Rule 15 of its Rules of Practice, 108 U. S. 581. If entirely new parties, who were strangers to the litigation at its first inception in, and progress through, the lower court can legally be brought within the jurisdiction of the appellate court by means of that form of constructive service found in publications in newspapers, we can see no valid reason why the living persons themselves who have all along been the actual partes to the litigation at its inception and through all of its stages, can not be brought within the jurisdiction of the appellate court by means of *constructive notice*, particularly when the prescribed method of giving such notice furnishes a greater and more reasonable probability of imparting *actual knowledge* of the proceeding in the one case than in the other. We think that the provisions of the statute under discussion requiring a record of the writ of error in the minute-book of the court of first instance, and proclaiming that such record shall be deemed and held to be notice to the defendant in error of the pendency of such writ of error proceeding in the appellate court, does insure far greater certainty and probability of becoming *actual notice*, than that supplied by newspaper publication, and why? Because this law notifies all litigants in advance that such a step in the litigation in which he is involved can regularly be taken, and, when taken, what its legal effect shall be, and points him with accuracy to the record book where he can acquire actual knowledge as to whether it has been taken or not, and the limitation statute informs him of the period within which it can be effectively taken. If he fails to acquire actual knowledge of the fact, the responsibility rests in his own laches and not upon any defect in the law. In the case of Nations

v. Johnson, 24 How. (U. S.) 195, it was distinctly held that the proceedings on an appeal or writ of error are rather a continuation of the litigation than the commencement of a new action, and that where a party in whose favor a judgment or decree is rendered leaves the State, and that judgment or decree is reversed on writ of error, with service of notice of the appellate proceeding only by publication, as the statute directs, the final judgment or decree is binding and conclusive on him, as in any other case. In Pennoyer v. Neff, 95 U. S. 714, in which the question "what is *due process of law* when applied to judicial proceedings" is elaborately discussed, it is held that a *personal* judgment is without any validity if it be rendered by a State court in an action upon a money-demand against a non-resident of the State who was served in the *court of first instance* by a publication of summons, but upon whom no personal service of process within the State was made, and who did not appear, and that no title to property passes by a sale under an execution issued upon such a judgment; but in that case the court, after so holding, says: "It is hardly necessary to observe that in all we have said we have had reference to proceedings in courts of first instance, and to their jurisdiction, and not to proceedings in an appellate tribunal to review the action of such courts. The latter may be taken upon such notice, personal or constructive, as the State creating the tribunal may provide. They are considered as rather a continuation of the original litigation than the commencement of a new action." And the case of Nations v. Johnson, *supra*, is cited in support of the observation quoted. To the same effect is the incisive reasoning of Chief-Justice MARSHALL, in Cohens v. Virginia, 6 Wheat. 408, 409 *et seq*. In Delano v. Jopling, 1 Litt. (Ky.) 117, the defendant was the special bail, for another in a suit

48 SUPREME COURT. [40th Fla.

State of Florida ex rel. v. Canfield et als.—Opinion of Court.

brought in Virginia against that person, and judgment was rendered against the principal. Under a statute then in force in Virginia after two writs of *scire facias* were issued against the special bail and returned *non est inventus*, judgment was rendered against him without the service of any sort of notice actual or constructive. This judgment against the special bail was afterwards sued upon in an action of debt in the courts of Kentucky and was held to be void by the trial court because of the non-service of notice upon the defendant special bail in the court of Virginia. The Court of Appeals of Kentucky, in reversing this ruling of the lower court, says: "That a judgment rendered against a defendant in any *original* suit, requiring the service of process, is void without such service, is a proposition to which we could not long hesitate assent. But to this general rule, like all others, there may be well founded exceptions; and the inquiry here is, ought not the case of *scire facias* against special bail to be one. * * * Very satisfactory reasons may be given why a judgment on *scire facias*, after unsuccessful diligence to find the defendant, may be rendered. In an original suit the defendant may not know of the record, and he is no party until notice be given him, and, therefore, a judgment without such notice ought not to affect him. A special bail can not be a stranger to the original record. He must be presumed to be acquainted with it, and with the extent of his undertaking. He comes into court and there in the same record undertakes for the defendant, in case he is cast in that suit, he, the defendant, will pay and satisfy the costs and condemnation of the court, or render his body to prison in execution for the same, or in case of failure, that he, the bail, will do it for him. He thus becomes a party, or, rather, a *quasi* party, and is

bound to take notice how the record progresses, and whether the defendant is condemned and pays the condemnation, either by his money, or surrendering his body. It would, in such case, be no arbitrary law to permit judgment to be rendered at once against the bail in future cases without any process, on its being apparent from the record that execution is ineffectual against the principal. The bail would be liable to no more than what he had undertaken. Hence a *scire facias* is styled a judicial writ, *viz*: a writ for the purpose of effectuating what has already been decided, or, in case of bail, to compel the bail to perform that which he hath solemnly undertaken of record; and the reason why the bail is summoned at all is out of abundant caution and tender regard to his rights, for the purpose of allowing him to show some matter which may have arisen since his undertaking, and which may exonerate him. Hence he is summoned to answer matters of record, and the judgment rendered of record after his undertaking, against his principal, is conclusive against him. There is, therefore, no necessity of taking the same care to bring him into court in order to subject him to his undertaking, as there is with regard to defendants in original actions where the matters in controversy are entirely *en pais*, and have never been settled or ascertained by judicial determination." To the same effect is Elsasser v Haines, 52 N. J. L. 10, 18 Atl. Rep. 1095. Similar reasoning is applied also in the case of Adams v. Rowe, 11 Me. 89, S. C. 25 Am. Dec. 266. In Garrison v Cheeney, 1 Wash. Ter. 489, text 493, it was held that "a writ of error is not a new action, but the continuation of the same action, which is but transferred to the Supreme Court for review. For the purpose of appeal, the action is practically pending in the court below, until the time for appeal has expired. It is an action there commenced,

50       SUPREME COURT.     [40th Fla.

State of Florida ex rel. v. Canfield et als.—Opinion of Court.

and upon which final judgment has been rendered in the district court, but there pending for the purpose of an appeal to this court." In Hinchman v. Rutan, 31 N. J. L. 496, a motion was made to dismiss the writ of error because it had no revenue stamp. The contention of the motion being that the provision of the U. S. Statutes at Large of 1862, requiring a revenue stamp of a given denomination to be put on "the writ or other original process by which any suit is commenced in any court of record, either law or equity," and declaring all instruments and papers requiring stamps, which shall be issued without them, to be invalid and of no effect, applied to the writ of error. The court overruled the motion, holding that a writ of error was not a writ or original process by which a suit was commenced, and was not, therefore, within this law of Congress requiring it to be stamped. The court says: "This transmission of the record from one court to the other  *  *  *   can not, as it would seem, be with propriety denominated the commencement of a suit in this court. The fact is that the suit begins in the subordinate tribunal and ends in the court of the last resort. And the writ of error, instead of being the method by which the suit is commenced, is that by which it is terminated." In Harle v. Langdon's Heirs, 60 Tex. 555, where a third person *voluntarily* purchased a tract of land from one of the litigants in an action of trespass to try the title to such land, such purchase being made from the successful litigant after he had recovered judgment in the subordinate court, but before the expiration of the time within which an appeal could be taken from such judgment, and prior to the taking of such appeal, it was held that a writ of error is but a further prosecution of the same suit instituted in the district court; and that a person who purchased after a judgment which might have been

appealed from, but before any steps were taken to give the appellate court jurisdiction of the cause, was a purchaser *pendente lite*, and would be bound by a reversal of such judgment on writ of error or appeal. The court says in that case: "Under our system every judgment is to be read in the light of the laws which provide a mode by and time within which they may be revised and corrected if found erroneous by an appellate tribunal, either upon appeal or writ of error; and all persons who voluntarily purchase property in litigation from a party to a suit between the time judgment is rendered and the time an appeal is perfected, or a writ of error is sued out, must in reason, be held to be purchasers *pendente lite*, and to hold subject to have whatever claim they may so acquire set aside, if the judgment be reversed, and the cause be ultimately decided against the person under whom they claim." The reasoning and conclusion reached in this case strongly emphasizes the idea that a cause carried to judgment in a court of first instance, can not be said to have reached its *finality* under a judicial system that provides a still higher court with jurisdiction to review and reverse such judgment; and that for the purposes of such a revision and review it is a cause *still pending* in the court of first instance, even though such final judgment has passed therein as that court has power to award. In the case of Fitzsimmons v. Johnson, 90 Tenn. 416., 17 S. W. Rep. 100, the facts were that executors appeared before a probate court in the State of Ohio, that had jurisdiction of their accounts, and made settlements upon proper notice to legatees, and obtained judgment confirming settlement and discharging them. The executors then, and ever thereafter, resided in the State of Tennessee. A legatee obtained reversal of this judgment in the appellate court upon writ of error. After remand of the cause the pro-

bate court corrected and restated the executors' accounts and adjudged the sum of $130,640 to be still in their hands as executors, and directed its distribution. The executors did not appear in the apellate court, or in the probate court after remand of the cause. The only notice given of the appellate proceedings was by publication, as authorized by the Ohio statute, upon the application for writ of error. Afterwards the legatees filed their bill in the chancery court of the State of Tennessee against the surviving executor who there resided to enforce the payment of the judgment rendered by the Ohio probate court. To this bill a demurrer was filed, mainly upon the ground that the appellate court in Ohio could not acquire jurisdiction over the non-resident executors by publication of notice of the appellate proceedings, and that consequently its judgment reversing the first judgment of settlement and discharge by the probate court was a nullity, and that the subsequent judgment of the probate court after remand of the cause from the appellate court was likewise a nullity. The chancellor sustained this demurrer and dismissed that feature of the bill that sought the enforcement of the Ohio probate court judgment. The Supreme Court, on appeal from this decree, in reversing it, say: "We do not concur in the view that the petition in error was a new suit, or that, to entitle petitioner to prosecute the same, she must have given the defendant therein the same notice required in the commencement of an original action. In saying this we are not unmindful of the fact that many authorities speak of a writ of error, whose office seems to be the same in most of the States as the petition in error under the Ohio law, as a new suit. Such is the language of some of the earlier decisions in Ohio. 3 Ohio, 337. In some of the cases in our own State a writ of error has been called a new suit (1 Lea,

290; 13 Lea, 151); in others it is said to be in the nature
of a new suit (6 Lea, 83; 13 Lea, 206); and in still
another the court says it is to be regarded as a new suit.
3 Head, 25. But in no case that we have been able to
find, or to which our attention has been called, does the
court decide that a writ of error is a new suit in the
sense of being the commencement of an original action,
or that it requires the same character and stringency of
notice as an original action. In the very nature of the
case a writ of error can not be an original action. A
writ of error lies alone in behalf of a party or privy to an
original suit already finally determined in the lower
court, and it must run against another party or privy to
such original suit. A writ of error has no place in the
law unless there has been an original action; and, where
given scope, it is but a suit on the record in the original
case." This court in the case of Gilmer v. Bird, 15 Fla.
410, has held that it was within the power of the Leg-
islature to authorize notice of the *institution of a  suit*
to be given by an attorney or party, instead of through a
writ issuing out of a court, as was provided for in the
code practice formerly prevailing here; and that the
"due process of law" required by the constitution to
be exercised in the deprivation of life, liberty or prop-
erty comprehends, not simply the formal writ or notice
by which a party is first informed of the legal proceed-
ing against him, but the *whole proceeding* after the orig-
inal and before judgment. And in Continental National
Bank v. Thurber, 74 Hun. 632, 26 N. Y. S. 956, it was
held that every sovereignty has power to regulate the
procedure of its courts and prescribe the rights which
plaintiffs may acquire and the liabilities which may be
imposed on resident defendants by the judgments of its
tribunals, and that the law providing for a substituted
service of summons upon *resident* defendants in an orig-

inal suit in lieu of personal service, was not violative of the constitutional provision that a person shall not be deprived of his property without due process of law.

We think that our Legislature has the power, not only to regulate and prescribe the procedure to obtain in our several courts respectively, but also to regulate and prescribe the procedure by which causes tried in the courts of first instance shall be *transferred for review* to other tribunals clothed by the Constitution with revisory powers; and that when, in so doing, it provides that the issuance and record of a writ of error in the court of first instance shall have the effect of transferring the cause and the litigants therein to the jurisdiction of the revising court for re-examination, it has prescribed that "due process of law" contemplated by the Constitution. As before stated, our own and many other courts have made use of the expressions that a writ of error "was a new suit," or was "in the nature of a new suit," but we have been unable to find that any court anywhere has gone to the extent of asserting that it was so essentially and radically an original suit or proceeding as to require the same certainty and rigidity in the evidence that the parties to it have received *actual notice* of its pendency, as is called for in an original action at its first instance; but, on the contrary, we find the procedure prescribed here prior to this law, and elsewhere, providing for different forms of substituted or constructive notice in such cases. As·early as 1832 our Legislature provided that the notice of an appeal, or the *scire facias ad audiendum errores* could be served upon the agent, or attorney of record in the court below, of the defendant in error where he was a non-resident, or was not in the State. And in 1833 it was further provided that "In all cases wherein any final judgment, order or decree may be pronounced or rendered in any of the

courts of this State, from which an appeal or writ of error lies to any other court of this State, if the party, defendant in appeal or error, be a non-resident, that notice of such appeal or writ of error be served upon the attorney or agent of said party defendant, or notice of said appeal or writ of error may be given by publishing the same in such newspaper in this State as may have the most general circulation for thirty days, and the court to which said appeal or writ of error is had, upon satisfactory proof that such notice has been given shall proceed to hear and determine said cause as if personal service upon the party had taken place." McClellan's Dig.' §§2 and 3, p. 843; §1274 Rev. Stats. Under this law, for upwards of sixty years, this court has repeatedly dealt with parties defendant in appellate proceedings who had been only *constructively* notified of such proceedings in compliance with this law through newspaper publication, and that it was "due process of law" has never here been questioned.

Whatever similitude may heretofore have existed between writ of error proceedings under the old law, requiring service of *scire facias* to hear errors upon the defendants therein, and those proceedings by which an entirely original suit is first instituted, and that has heretofore given rise to the expressions that "a writ of error was a new suit," or "in the nature of a new suit," we think that one of the practical effects of the law under discussion is to render the appellate proceeding by writ of error more pointedly a continuation of the same suit by and between the same patries. It is a well settled and cardinal rule that in passing upon the constitutionality of statutes generally, nothing but a *clear* violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable

doubt as to the constitutionality of an act it must be resolved in favor of the act and it should be upheld. State *ex rel.* v. Hocker, Judge, 36 Fla. 358, 18 South. Rep. 767. The assault here made upon this act has not given rise to any serious doubt in our minds as to its entire constitutionality, but even if it had, in the presence of this imperative rule we would feel obliged to resolve any such doubt in favor of the validity of the act and to sustain it.

It is further argued here that this statute is partial in its operation, in that it affects only cases appealed from the Circuit Courts to the Supreme Court, leaving a different procedure for appeals from inferior courts to the Circuit Courts. There is no merit in this contention. Under our judicial system we have but one Supreme Court clothed by the constitution with final appellate jurisdiction over all causes originating in the several Circuit Courts. This statute furnishes the procedure by which all cases *at law* tried and pushed to judgment in any or all of said Circuit Courts may be transferred for review to such appellate court, and is a uniform procedure universally applicable to all common law cases reviewable on writ of error by the Supreme Court. The Circuit Courts in turn have final appellate jurisdiction from divers inferior courts and it is no objection to the law under discussion that a different procedure is prescribed for the taking of appeals from those inferior courts to the Circuit Courts. This statute prescribes, as we think, due and reasonable process of law, and, when its provisions are complied with, a judgment of this court in a cause brought to it in conformity therewith could not be said to have the effect of depriving any party to it of any right without that due process of law contemplated by the constitutions of the United States and of our own State.

State of Florida ex rel. v. Canfield et als.—Opinion of Court.

It is again insisted here in support of the motion to dismiss that the individuals who comprised the city council of the municipality of St. Augustine at the time this action by mandamus was instituted in the Circuit Court against them as such official board went out of office before the rendition of the judgment sought to be reviewed and before the issuance of the writ of error herein, and that other persons have been elected to the office of city councilmen in there stead, and that these newly elected councilmen are not parties to this writ of error, and have no sort of notice of the pendency thereof. This contention is fully answered and meets with its downfall in the case of County Commissioners of Columbia County v. Bryson, 13 Fla. 281, where the language of the Supreme Court of Kentucky, in Maddox v. Graham & Knox, 2 Met. (Ky.) 56, is approvingly quoted. In the latter case it is held that "A mandamus against a city council is virtually a proceeding against the corporation, and the judgment is obligatory on the members of the board of councilmen in office at the time of its rendition. It may assume the character of an individual proceeding, if it becomes necessary to enforce the orders of the Circuit Court by attachment or other process for contempt. But a change in the membership of the board does not so change the parties as to abate the proceeding. The constituent parts of the board may not be the same, but the representative body remains identical." The principle announced here fully answers the contention made. The duty sought to be enforced by mandamus in this case is one that if due by any one, devolves upon the city council as the official representative of the municipal corporation, and the corporation in such case is the real party and not the individuals composing its council. So long as the corporation exists it continues to be the real party in such a

case, regardless of mutations made in the personnel of those composing its representative council.

Having disposed of these grounds of the motion, raising questions that we deem it important to settle at once in view of the recent legislation involved and questioned, we now revert to the first ground of the motion and find it to be well taken. The petition for mandamus and the alternative writ issued in response thereto was on behalf of John Andreu and twenty-one other individuals named therein as relators. The judgment therein from which the writ of error was taken was a joint judgment quashing and dismissing the alternative writ and adjudging the costs jointly against all of said relators. It was necessary, under the repeated rulings of this and other courts, to sue out the writ of error in the names of all the parties against whom the judgment was jointly rendered. The writ of error issued in this case, as copied into the transcript of the record, was issued in the name of John Andreu *"et al.,"* nowhere naming or showing who his co-plaintiffs in error are, but showing affirmatively, by the use of the abbreviation *"et al.,"* that there are other unnamed co-plaintiffs in error. This is fatal to the writ of error, that in all cases should give the individual names of all parties plaintiff and defendant in error in order that this court may know by the record who the parties are before it; more especially should this be the rule under our statute discussed *supra* that substitutes the record of the writ of error in the court below in place of the former service of *scire facias ad audiendum errores.* Deneale v. Stump's Executors, 8 Pet. 526; Holliday v. Batson, 4 How. 645; Smith v. Clark, 12 How. 21; Estis v. Trabue, 128 U. S. 225, 9 Sup. Ct. Rep. 58; Beall v. Executors of Fox, 4 Ga. 403; Miller v. McKenzie, 10 Wall. 582; The Protector, 11 Wall. 82; Alston v. Rowles, 13 Fla. 110;

Guarantee Trust & Safe Deposit Co. v. Buddington, 23 Fla. 514, 2 South. Rep. 885; Johnson, Daniels & Co. v. Polk County, 24 Fla. 28, 3 South. Rep. 414. Were it not for the fact that the time limited by law for suing out a writ of error in this case has some time since expired, we should feel disposed to withhold our judgment of dismissal, and to permit an application to be made for amendment of the writ of error by making the unnamed joint judgment defendants co-parties plaintiff in error therein; but, as recently held at the present term in the case of Cornell v. Franklin, to permit such an amendment would be to make the writ of error an entirely new writ, issued now for the first time as to the new parties brought into it by the amendment, and as to whom the time limited for suing out such a writ has expired, the judgment below having been rendered on July 8th, 1897. In the same case—Cornell v. Franklin—it is further announced that this court will not permit amendments of writs of error to be made so as to bring into it new parties plaintiff in error, when it appears that the time limited by law for suing out such writs has expired as to the parties sought to be brought in by such amendment. Upon the first ground of the motion, the writ of error herein must, therefore, be dismissed.

Another ground of this motion to dismiss is that the original writ of error has not been returned to and filed in this court. As the motion has already been disposed of upon another ground it would not ordinarily be necessary to consider this additional ground thereof, but as there seems to be some doubt at the bar as to whether the recent statute already discussed herein has not effected some change in the former practice governing the return and disposition of the writ of error itself, we deem it important to pass upon this question of practice also. In Joost v. Elliott, 20 Fla. 924, it is said

that "the *originals* of all writs by which parties are
brought into this court, whether they have issued from
this court or by the Clerk of the Circuit Court, should
accompany the transcript of the record here if service
has been perfected when the record is filed, and if ser-
vice has not then been perfected, the writ should be re-
turned to this court when served and by the proper re-
turn day." First National Bank v. King, 36 Fla. 25,
18 South. Rep. 1. Chapter 4529, approved May 8th,
1897, makes no change in the former office or functions
of the writ of error. As heretofore, under this statute,
it still subserves the purpose of removing the record
from the Circuit Court into this court, and it still con-
tinues to be the writ of this court, but, as is clearly
shown in the title of the act as well as in the body there-
of, *the recording of the writ of error in the minute-book of
the Circuit Court,* is designed as a substitute for the ser-
vice upon the defendants in error of the abrogated writ
of *scire facias ad audiendum errores,* and serves the pur-
pose of *notice to the defendants in error* that they and the
record of their case have by such writ been removed for
review to the appellate court. Having, as it does, 'the
additional effect of notice of the appellate proceedings,
this provision of the statute requiring the record by the
Clerk of the Circuit Court of the writ of error in the
minute-book of his court *must in every case be strictly
complied with,* otherwise this court would not acquire
jurisdiction over the persons of the defendants in error.
There is nothing, however, in the statute that changes
the former rule requiring the return to this court of the
original writ of error. As before it should be returned
to and filed in this court with the record in the cause, or,
at latest, by its return day; and in every case it should
have endorsed upon it the certificate of the Clerk of the
Circuit Court showing the fact that *it has been recorded*

*in the minute-book of the Circuit Court,* and showing *the date of such record* and the page of the book where recorded, and the *transcript of the record* should also contain a certified copy of such record of the writ of error certified by the Clerk of the Circuit Court in the same manner that he certifies any transcript of any other document of record in his office, having such copy to show also the *date of its record in his minute-book,* as evidence to this court of its jurisdiction over the parties.

Upon the first ground of the motion the writ of error herein is dismissed.

CARTER, J., dissenting.

By the decision in this case this court assumes a position in the front rank of those who concede power in the Legislature to prescribe constructive service of process in personal actions. I had always supposed that certain rights of individuals among a free people were laid away among the fundamentals by that provision of our Declaration of Rights which declares that "No person shall* * *be deprived of life, liberty or property without due process of law," and that by this provision the hand of sovereignty itself was stayed whenever extended to deprive individuals of those rights. This provision is but a paraphrase of a part of Chapter 29 of *Magna Charta,* which was adopted by the people of Florida by express legislative enactment long before we aspired to be a sovereign and independent State. Flint River Steamboat Company v. Roberts, 2 Fla. 102, text 113, S. C. 48 Am. Dec. 178. Every constitution adopted by our people has perpetuated this provision of *Magna Charta,* and placed it beyond the control of government, and while other features of our organic law have been changed, modified or abrogated through amendments and revisions of the Constitution, this provision has remained, im-

mutable in substance through all the years that have gone. A provision which for seven hundred years has been the pride and boast of Englishmen and their American descendants, which for ages constituted a shield against unwarranted exercise of kingly power, which is incorporated into the unwritten limitations upon the powers of government in England, and the written limitations upon similar powers in this country, should not be lightly disregarded or frittered away by casuistic interpretation. In this case we deal with it only in its relation to proceedings in courts of justice. An examination of the decided cases on this subject by the American courts will show that they now very generally decline to attempt a definition of due process, or even to outline the general principles by which to ascertain its meaning, leaving each case to be determined to a great extent by such principles as the particular tribunal called upon to decide it may happen to think applicable to that special case. As a consequence the principles controlling that case may be held inapplicable to the next one that arises, and very frequently courts of different States reach opposite conclusions on the same state of facts. Compare our decision in Flint River Steamboat Company v. Roberts, *supra*, with Flint River Steamboat Company v. Foster, 5 Ga. 194, S. C. 48 Am. Dec. 248; and Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. 272, with Hurtado v. People of California, 110 U. S. 516, 4 Sup. Ct. Rep. 111, 292. In the last mentioned case many definitions of due process are given, but upon careful reading it will be found that they are all "glittering generaltities," highsounding but conveying no definite meaning. I admit that it is difficult to frame an exact definition, but I do not admit that there are no definite principles by which to determine what is due process, or that it was intended by this

provision to invest courts of justice with discretion to condemn or approve a particular proceeding without resort to fixed principles. A power of this character in the judiciary is as dangerous to a free people as in any other branch of the government. A written constitution is a cable intended to hold the ship of State in safe waters; to confine her to the channels of conservatism, plainly marked out upon the charts of past experience, and to prevent her being driven into unknown and doubtful waters by occasional gusts of popular opinion. It is rigid, not elastic; it possesses the unchangeableness attributed to the laws of the Medes and Persians so long as it is not annulled or amended in the manner pointed out by its terms. The provision under consideration was transmitted to us by our ancestors; its necessity grew out of their actual experiences, and it was designed to prevent a repetition of previous unnecessary and arbitrary acts of government in whatever form or guise they might be attempted; and it is to their experience both before and after its adoption, and to our own past history and methods that we must look in order to ascertain what is, and what is not, due process. Can it be doubted then that our people had in view the essential, fundamental rights and guaranties of the common law relative to judicial proceedings in enacting this clause of our Constitution, or that it was intended to have a definite, fixed meaning, which neither time, place nor circumstance could alter, which to-day, to-morrow and forever, should afford protection from encroachment upon these rights, so long as the Constitution remained in force? Can it be doubted that this provision was intended to perpetuate in our jurisprudence, the substance of those principles of the common law which required the rights of its people to be adjudicated by judicial tribunals, proceeding upon notice, trying isssues evolved from plead-

ings in a deliberate and conservative manner according to existing laws in all cases where the settled rules of the common law, acted upon and enforced in this State prior to the Constitution, gave these rights? The procedure by which this result is to be accomplished may be prescribed, altered or changed by the Legislature at will, where not otherwise forbidden by the Constitution, but the substantial rights, that is to say, the tribunal the notice, the issue, the trial, can not be taken away. The proceeding which we are now considering has none of the elements of a proceeding *in rem*. It is purely personal in its nature, and the defendants in error are residents of this State, accessible to personal service of process from this or the Circuit Court. Under these circumstances, is that proceeding due process by which this personal action against these residents is given to the jurisdiction of this court for adjudication with no notice to defendants in error, save such as may be implied from the record of the writ of error in the minutes of the Circuit Court? If there is any one thing secured by the constitutional provision under consideration upon which the courts agree, it is that to authorize a personal judgment, the party defendant must be notified and given an opportunity to defend. I apprehend that this is a natural right; but whether natural or artificial its commanding importance has been so long recognized by civilized people that to deny it is "revolting to the rules of justice." Russ v. Mitchell, 11 Fla. 80, text 89; Flint River Steamboat Company v. Roberts, 2 Fla. 102, S. C. 48 Am. Dec. 178; Ponder, Executor, v. Graham, 4 Fla. 23; *Ex parte* Nightingale, 12 Fla. 272; Pennoyer v. Neff, 95 U. S. 714; Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. Rep. 841, and authorities cited. And although some courts seem to concede an almost unlimited power in the Legislature to determine as against its own citizens.

the character of notice to be given, whether personal or constructive (Continental National Bank v. Thurber, 74 Hun, 632, 26 N. Y. S. 956, affirmed 143 N. Y. 648, 37 N. E. Rep. 828), I deny the powers of government in this State, so long as the provision under consideration remained a part of our Constitution, to authorize constructive service of notice by recording it as against those persons who are accessible to personal service within its jurisdiction, so as to authorize a personal judgment.    Brown v. Board of Levee Commissioners, 50 Miss. 468; Bardwell v. Collins, 44 Minn. 97, 46 N. W. Rep. 315, S. C. 9 L. R. A. 152; McNamara v. Casserly, 61 Minn. 335, 63 N. W. Rep. 880; Attorney-General v. Guilbert, 56 Ohio St. ——, 47 N. E. Rep. 550; Brown on Jurisdiction, §55.   Our ancestors required the best notice practicable to be given.   No judgment was ever pronounced until after personal service, or in certain cases, until the return of two successive writs unexecuted.   Is there anything in the new and varied experiences of our present situation and system which requires us to accept as due process the lowest grade of constructive service whereon to found our personal judgments? We have means of transportation and of communicating intelligence never dreamed of a few generations ago. These means are far more rapid and effective than those possessed by our ancestors.   Instead of being compelled to accept an inferior grade, ought we not with these facilities for giving notice demand as good or even better, if it were possible, than that insisted upon by them?   It seems to me, when we are content to substitute a low grade of constructive for personal service that we have been drawing too freely of the inspiration which comes from continental fountains of civil justice, where the absolutism of government prevails.

It is insisted, however, that the act under consider-

ation has reference to writs of error only; that the writ of error is not a new suit, but merely a step in the continuation of the original suit; that the common law rule requiring notice applied only to the original notice of the institution of the suit, and not to subsequent proceedings in the cause. With this view I do not concur. A writ of error is a proceeding, the object of which is to deprive the defendant in error of a judgment which he has obtained. The proceedings are had in a different court, and a limitation of the time to begin such proceedings with a saving clause is provided, in the same manner as for original suits. The proceedings may be abated, by showing that they are barred, or that they are taken against good faith, or that plaintiff in error, if a criminal, has escaped, or that another writ of error in the same cause is pending. The appellate court enters and enforces its own judgment for costs, and under our statute, is empowered to render such judgment as the court below should have rendered in certain cases. It grants relief, not demanded in the lower court, by awarding damages where the writ was taken for delay. The writs issued to bring the parties and the record are original writs of the appellate court, and are process within the meaning of the Constitution. New pleadings are infused into the case in the appellate court, peculiar to that court, viz: assignments or errors, and, under our rules, abstracts, &c. There can, therefore, be no doubt that a writ of error is in the nature of a new action, and not a mere continuation of the original suit, and we have express decisions of this court to that effect. State v. Mitchell, 29 Fla. 302, 10 South. Rep. 746; United States Mutual Accident Association v. Weller, 30 Fla. 210, 11 South. Rep. 786; Loring v. Wittich, 16 Fla. 323, text 327; Glasser, Kuder & Ottensoser v. Hackett, 37 Fla. 358, 20 South. Rep. 532. It was deliberately and

advisedly held in State v. Mitchell, *supra*, that "a writ of error is a new action, and not a mere continuation of the former suit." To sustain this proposition the court in that case cites 2 Tidd's Practice, 1141, where it is laid down in broad terms that a writ of error is considered a new suit; International Bank v. Jenkins, 104 Ill. 143, where it was held that a writ of error from the Circuit Court of Cook County to the appellate court was barred by the provisions of a section of the United States bankrupt act reading, "no suit, either at law or in equity shall be maintainable in any court," &c.; Ripley v. Morris, 2 Gilman 381, where it was held that "a writ of error like a *scire facias* is considered a new action," and it was, therefore, ruled that a writ of error would be dismissed for failure to file a bond for costs under a statute requiring a bond in all cases in "law or equity" by non-residents; and 6 Am. & Eng. Ency. of Law, p. 812, where it is stated that "a writ of error is in the nature of a suit or action, when it is to restore the party who obtains it to the possession of anything which is withheld from him; and it is considered a new action and not the continuation of one already commenced." Not only does a reference to the authorities cited show clearly that the court meant exactly what it said in that case, but it was absolutely necessary to decide whether a writ of error was a *continuation* of the original suit or not, in order to determine the question then before the court, which was whether a writ of error allowed but not actually sued out, was pending in this court so that it could be dismissed. Also in Glasser, Kuder & Ottensoser v. Hackett, *supra*, it was held that one writ of error might be pleaded in abatement of another, which certainly would not be admissible if the writ of error be not in the nature of a new action. In Weiskoph v. Dibble, 18 Fla. 22, it was held that the writ was a new suit or

action; that questions as to the sufficiency of process therein were controlled to a great extent by the rules prevailing in original actions; that the *scire facias ad audiendum errores* performed the same function as the summons *ad respondendum* in ordinary actions, and that the *scire facias* was process within the meaning of that clause of the Constitution providing that the "style" of all process shall be "The State of Florida." By this decision greater dignity is given to a *scire facias* than to a summons in an original action under our former code; for, as to the latter, it was held in Gilmer v. Bird, 15 Fla. 410, not to be "process," within the meaning of the Constitution. The distinction lay perhaps in the fact that the summons under the code did not issue from a court, but by plaintiff's attorney; while under the statute a *scire facias* issued from the court. I take it that it is definitely settled in this State that a writ of error is either a new suit, or in the nature of such, or at any rate *not a continuation of the original suit,* and I am unwilling to overrule these decisions in order to sustain proceedings in this court upon constructive service in personal action. The writ of error and the *scire facias* were both writs of this court, and not of the lower court. Even though in fact issued by the clerk of the lower court, he acts in that matter as a clerk of this court. First National Bank v. King, 36 Fla. 25, 18 South. Rep. 1. The act of 1897 does not change the language, character or function of the writ of error, or of any proceeding therein. It does not make the proceeding in this court a continuation of the original suit any more than it was before, nor does it make the isuance of the writ an act of the trial court or a step in the cause in that court. It does not purport to declare that the proceeding by writ of error is so essentially changed that notice is no longer necessary; indeed, its whole scope

shows that the Legislature still regarded notice as being essential to the jurisdiction of this court, and its only object was to authorize constructive service of such notice. It does not make the writ of error notice in itself; it simply abolishes the writ of *scire facias*, and substitutes in the place of an *executed scire facias* the record of the writ of error. Now it is certain that at common law a writ of error was so essentially original in its character that unless the defendant in error voluntarily appeared, the court of error acquired no jurisdiction over his person to adjudicate the cause until a *scire facias* was issued and served, or in some instances until two successive writs were issued and returned unserved. In other words, the proceeding was so essentially original that the appellate court could not entertain jurisdiction without personal service, or at least without the positive evidence of two unsuccessful efforts to make such service. Had the Legislature undertaken to make appellate proceedings by writ of error a step in the original cause, or a continuation thereof, then a different question would arise under this statute; but they have not done that. They have left the writ precisely as it was at common law, and as it was before the act was passed. If, under these circumstances, the Legislature has power to abolish notice, or substitute the lowest grade of constructive for personal notice, and yet leave the action the same, why can not the Legislature abolish the summons *ad respondendum*, and substitute a record of the *praecipe* as notice in personal suits? Our Constitution must be construed in the light of the common law. It was intended to perpetuate certain fundamental rights and principles recognized by the common law, and to forbid certain abuses that had crept into the administration of that law, or to guard against a repetition of excessive powers of government which past experience demonstrated

needed a check.  Not only did the common law require
personal notice of a writ of error where it could be ob-
tained, but the uniform practice in this State for at least
seventy years has been to give personal notice when-
ever it was practicable to do so.   Section 9, act' ap-
proved November 12, 1828; section 9, act approved
February 10, 1832; section 1274, Revised Statutes.

I do not think the cases cited in the opinion of
the court sustain the constitutionality of the act.    I
believe the true rule regarding constructive service of
the notice of a writ of error, is clearly set forth and
defined in the case of Nations v. Johnson, 24 How. 195,
in which Mr. Justice CLIFFORD says:   "The question
here is, whether a party duly served with notice in a
subordinate court, after he has appeared and answered
to the suit and secured an erroneous judgment in his
favor, may voluntarily absent himself from the jurisdic-
tion of the appellate tribunal so as to render it impos-
sible to give him personal notice of an appeal, and still
have a right to complain that the notice was served by
publication, pursuant to the law of the jurisdiction from
which he has thus voluntarily withdrawn.   We think
not."  He says further, "*Actual* notice ought to be given
in all cases where it is *practicable*, even in *appellate* tribu-
nals, but whenever *personal* service has been rendered
*impossible* by the removal of the appellee or defendant in
error from the jurisdiction, service by publication is suf-
ficient to give the appellate tribunal jurisdiction of the
subject and the person, provided it appears in the rec-
ord that personal notice was given in the subordinate
court, and that the party there appeared and litigated
the merits of the controversy."   The case of Fitzsim-
mons v. Johnson, 90 Tenn. 416, 17 S. W. Rep. 100,
also related to constructive notice of a writ of error on
a *non-resident*—one who could not be personally served.

The case of Delano v. Jopling, 1 Litt. (Ky.) 117, involved the validity of a judgment obtained against one who was special bail for another upon two successive writs of *scire facias* returned unexecuted, and the judgment was sustained because the proceeding in which it was rendered was in *strict pursuance of the common law*, which permitted judgment upon such return. The case of Elsasser v. Haines, 52 N. J. L. 10, 18 Atl. Rep. 1095, involved the validity of a judgment founded on a recognizance entered in court, on return of two successive writs of *scire facias, "nihil habet,"* and the judgment was sustained because the proceeding was shown to have been *strictly conformable to the common law.* This class of proceedings is recognized in Barrow v. Bailey, 5 Fla. 9, where it is said (page 18) that the common law rule allowing the relief sought by a *scire facias* upon two returns "nihil" would seem to speak a reproach upon that system of law which claims to be founded upon reason and natural justice, were it not for the fact that the defendant was not absolutely concluded but could have an *audita querela,* and thereby present his defense, or he might frequently be relieved on motion. The case of Adams v. Rowe, 11 Me. 89, S. C. 25 Am. Dec. 266, involved the validity of a judgment rendered upon constructive service of a *scire facias* issued upon default against one served with trustee process; the party against whom the judgment was rendered having *removed from the State* at the time the *scire facias* was issued. The acts of 1832 and 1833 cited by the court, applied only to persons who were *not* accessible to personal service, and there can not be found at common law or in this State, a single decision or statute intimating that constructive service of a *scire facias* in error as against persons accessible to personal service would suffice to give an appellate court jurisdiction. The val-

idity of Rule 25 adopted by this court in 1873 has never been judicially determined by this court. It embraces but few cases, and for this reason, perhaps, has never been questioned. It relates to the making of new parties in this court in causes *already* pending here where the court has previously by its proper original process acquired jurisdiction of the subject matter and the original parties. It may, therefore, be valid. But whether valid or not, I do not think it becomes a precedent whereby we should sustain an act of the Legislature providing for unconstitutional service of our original process. The other cases cited by the court do not touch the question of notice in appellate proceedings, but simply sustain the proposition that the writ of error is not an absolutely original proceeding. In none of these cases did the court undertake to say that as against residents capable of being personally served, constructive service could give jurisdiction, except in those cases where personal service was not required at common law, nor have I been able to find a single case where any court has held that constructive notice of a writ of error can be given in any case where personal service is practicable, nor that such notice can be entirely dispensed with at the will of the Legislature. The only countenance to such a theory is found in the language of Justice Field, in Pennoyer v. Neff, 95 U. S. 714, text 734, which lays down the broad proposition that notice of appellate proceedings may be either personal or constructive, at the will of the Legislature. In that case, however, this question was not involved; he states the proposition as an exception to a general rule declared in the main case, and he cites the case before alluded to in 24 Howard as sustaining that proposition which, as I have pointed out, expressly declares that

State of Florida ex rel. v. Canfield et als.—Dissenting Opinion.

personal notice should be given where practicable in appellate proceedings.

I had hoped that the act under consideration would relieve us from many technical questions of practice arising under the old form of obtaining jurisdiction in error, but I see many difficulties ahead of us in enforcing the new act, which it is unnecessary to mention at this time. I believe that under our present rules, which require notices to be served upon the opposite party at various stages in the progress of submitting the case in this court, all parties or their attorneys would have actual notice of the pendency of the writ of error; but the notices required by these rules were never intended to supply the place of original process whereby to acquire jurisdiction of the person, and these rules are subject to repeal by this court at its pleasure. I am unwilling to affirm the constitutionality of an act of the Legislature which can be upheld only in connection with the rules of a court which it can abrogate at any time.

It seems to me that if the act of 1897 does not exhibit a departure from due process of law, it is hard to conceive of one that can. The writ of error was of such a character, whether original or not, that no court of error could at common law, as it existed for ages, acquire jurisdiction over the defendant therein without service upon him of an original process, if he could be found. This was the recognized due process of law by which to acquire jurisdiction. This was also the law of this State by express statute for seventy years. It seems to me that if proceedings in error were merely the continuation of a pending suit, the writ itself being a step in the cause, the astute lawyers of the common law, and those of our own country, would long since have found it out, and insisted upon the repeal of a useless and oftentimes difficult and expensive ceremony of giving notice

of such writs. The fact that they have not done so and that the courts have uniformly held that service of notice was jurisdictional, is persuasive evidence to my mind that the proceeding is in the nature of a new action, so as to require personal notice where practicable.

In my opinion Chapter 4529, acts of 1897, is unconstitutional and void.