Flint River Steam Boat Company, *vs.* Roberts, Allen & Company.

FLINT RIVER STEAM BOAT COMPANY, *vs.* ROBERTS, ALLEN & CO.

Where judgment had been rendered under the peculiar provisions of the second section of an act of the General Assembly approved January 4, 1847, entitled "An act given a lien to steam boat men and others navigating the Bay and River of Apalachicola," upon the affidavit of the plaintiff, without notice to the defendants or appearance by them and without any declaration filed or assessment of damages by a jury:---Held that such judgment must be reversed notwithstanding the statute does not expressly require either a summons, appearance by or notice to defendant, or a declaration or a jury trial.

Where consequences in violation of common reason, common right and the principles of common justice arise even collaterally out of a statute, it is void pro tanto.

The statute above referred to is in violation of the declaration of our Constitution, " That the right of trial by jury shall forever remain inviolate," and is null and void.

Writ of Error to Franklin Circuit Court.

The facts of the case precede the opinion delivered by the Chief Justice.

*W. G. M. Davis,* for plaintiff in error, contended:

That the Judge who granted the order on which the judgment was entered, did not possess any right to exercise jurisdiction as a Judge of the Circuit Court, in the county of Franklin, on the day on which he made the order. The Constitution has given power to the Legislature to pass laws *requiring* the Judges to *alternate.* The power so given has been exercised by the Legislature by act, which

if adhered to compels them to *preside* in turn, in each and every Circuit of the State. The act not only affirmatively requires them to officiate as the Judge of each Circuit once in two years, but expressly negatives the exercise of judicial functions by the same judge in the same Circuit oftener than once in two years.—— The terms used *"shall not preside,"* are broad and comprehensive. In the present case the Judge of the Middle Circuit, according to these views, had no right under the alternating system to preside in Franklin at the time he gave the order for judgment.

The affidavit on which the order was issued was made by an *agent,* and this constitutes another ground for reversal. The statute being adverse to the common law, every person seeking the benefit of its provisions should be held to pursue the strict letter of the act.

The next and last objection to which I will ask the attention of the Court is that the law itself is *unconstitutional.*

It is unconstitutional inasmuch as it infringes that provision of the Constitution of the U. States which provides that " in trials at common law where the amount in controversy exceeds twenty dollars the right of trial by jury shall remain inviolate." ' The amount in controversy exceeded twenty dollars and the remedy for the recovery of the demand necessarily must be by the course of the common law. In other words the subject matter of the controversy was within common law jurisdiction.

Such being the nature of the right to be enforced, it only remains to enquire whether the remedy provided by the Legislature, and under which the proceedings were had, does or not preserve the right of trial by jury *inviolate.*

The act authorizes the party claiming against a boat for supplies —to have judgment by an *ex parte* demand supported by affidavit.—— There is no trial at all either by jury or otherwise—nor has the party an opportunity of being heard in his defence. The proceedings under the statute are similar to those by the civil law where a party is condemned for *contumacy* for not appearing after summons, &c. The difference in the proceedings are that in the cases under the statute no summons of any kind is served. Now it must be evident that where the party is condemned to pay a demand by an ex parte proceeding, the right of trial by jury is altogether unavailable to him. The remedy provided by which the defendant may have the judgment opened, it is true, does secure a

Flint River Steam Boat Company, *vs.* Roberts, Allen & Company.

jury trial, but it prescribes terms and conditions hard to be complied with, unusual in the course of the common law, and calculated to hinder and prevent a defendant from obtaining the benefit of a jury trial.

The law requires that the defendant shall do all that a defendant in Equity is required to do, that he shall by affidavit admit or deny the whole debt or some part, and if a part is admitted that such part shall be paid ere he be permitted to contest the remainder, and that he shall give bond to respond to the final judgment.   Now it may happen that the owner of a boat is unacquainted with the facts relating to the demands, and he may be scrupulous as to the denial of the validity of a demand of which he knows *nothing*.   He may not be able to give security.   It is evident that all the requisitions of the statute impose conditions unknown to the common law, and that they are calculated to render the attainment of the right of jury trial less easy and more difficult.   Whatever delays, hinders or obstructs a party in the pursuit or enjoyment of a right, may be truly said to *violate* such right.   In order to a correct determination of what was meant by the clause of the Constitution referred to, let us refer to the trial by jury as it existed at the time of its adoption, and such as we find it was at that time, such must it continue to be considered, and in order to obey the spirit of the Constitution must be preserved to the defendant undiminished and unaltered from its pristine state, when the Federal Government was created.   In all cases where the Constitution refers to rights and remedies without specifically defining in what consists the particular right, or what is the nature of the remedy, it has been decided by the Supreme Court that reference must be had to the common law as it stood at the adoption of the Constitution, to determine any question that arises on such subject.   Now it may be fairly argued that whenever the mode of proceeding in trials at common law is so altered as to postpone the trial by jury to a time subsequent to the rendition of the judgment and the seizure of the defendants property, that such a course of law, being entirely different and opposite to the common law method of proceeding, is a violation of the common law, and if a violation of the law which secures a right to a party, it is a violation of that right.   Any law it has been determined by the Supreme Court of the United States, which, in prescribing the remedy on contracts, so acts as to obstruct the party in pursuit of his right to recover on a contract, and renders it " hardly

worth pursuing," is a law " violating the obligation of contracts." Now as a carollary to such proposition of constitutional law, may we not assert that a law which materially alters—varies the mode of trial by jury, and which imposes new, greater, and hard conditions, as a pre-requisite to its enjoyment, *violates* the *right* which the Constitution declared should *remain forever inviolate.* Certainly the conclusion is fair and legitimate and the premises and the reasoning are analagous and parallel. The Legislature may alter so as to increase, but it *cannot* alter so as to diminish the right. Whenever in human affairs a right which an individual member of society is so interfered with as to hinder and obstruct him in the enjoyment of the benefits which flow from its uninterrupted possession, it is said to be *violated.* Whenever an object of art, a monument raised to commemorate the great deeds of some departed hero is shorn of its fair proportions by the rude hands of man, it is said to be violated. Such examples of the *acceptation among men* in which the word is used, are cited to sustain the positions assumed, that inasmuch as the act in question hinders and obstructs a man in the employment of the right of trial by jury, such as it was when the Constitution secured it to him, and whereas by the provisions of the act, such right has been marred in its beauty of form and " curtailed of its fair proportions," has been narrowed and confined in its limits, the act itself must be considered as operating to *violate* the right.

The law in question also violates that provision of the Constitution of the United States which declares that a citizen shall not be deprived of his property except by due course of law.

The meaning of the Constitution was, that the property of a man should not be taken away except by the verdict of a jury and judgment of a Court and after a trial at law. It was intended to prevent confiscation and seizures by arbitrary authority, or by private hands, under pretence of doing summary justice. It therefore provides that the *due course of law* shall be followed. It inhibits the passage of a law giving an extraordinary and particular remedy to a particular individual or to a particular class of men.

The *due course of law* meant was the course which was pursued at the time the Constitution was adopted, subject to such alterations and modifications (as might be effected by the Legislature,) not inconsistent with the true spirit of the *common law,* the great original

head and source of all the law known to the Constitution, or meant to be defined by that instrument under the *nomen generalis*—LAW.

I contend that the Constitution by the provision last quoted meant to prohibit the passage of a law to give any particular person or persons particular remedies by means of which they could obtain possession of the property of another, which proceeding should be different in its spirit and in its operation, from the usual and existing "*course of law*," which should be required of other citizens, and contrary to that spirit and course of the *common law* designated by the terms employed in the section of the Constitution last quoted.

All particular and partial Legislation might be safely declared to be in violation of the spirit of the Constitution of our State, and that of the United States; but certainly such Legislation is so, which gives to one man or set of men rights not to be enjoyed by others, and rights which if enjoyed at all must be possessed and used at the expense of, and by means of, the curtailing of the rights of others. Such is the character of the act in question—it permits one set of men to proceed in a summary manner to enforce a right, whilst other men are held to the pursuit of their rights in the slow, yet steady, and sure method known to the common law, and derived · from it, but simplified and perfected by the statutes of the State.

For all these reasons I contend that the act in question is unconstitutional, in violation of the express requirements of that instrument, and in violation of the spirit of it. To conform to the spirit of that Constitution the remedy should be analagous to the common law remedies. The tribunal which decides upon the right, should proceed according to the distinguishing and characterizing forms of common law Courts. The party defendant should be summoned in person or by attachment of his property, and be allowed "a day in Court," to be heard by himself or by attorney in his defence, he should have the right to examine the witnesses produced against him, and to produce witnesses in his own behalf, and the trial of the issues of fact should be submitted to a jury, and not decided by the Judge on the testimony of the plaintiff alone. Any other mode of proceeding (by means of which a man's property is seized and taken out of his possession,) not being in accordance (substantially) with the requisites and characteristics before enumerated, is contrary to the spirit of the Constitution, and foreign to our institutions of Government; unworthy to be practised among a free people, where equality in all things is asserted as a fundamental principle of the

Flint River Steam Boat Company, *vs.* Roberts, Allen & Company.

compact of Government, and in violation of the provision which requires the observance in all cases of the "*due course of law.*"

*Carmack & Baker*, for Defendants in Error:

In this case there are five grounds of Error assigned. We will notice them in detail :

1. It is alleged that the Judge of the Middle District granted the Fiat. And that it should have been granted by the Judge of the Western District.

To this we reply that the application may be made before "any Judge of the Circuit Court in any county in which said boat may lie." Act 1846, Thomp. Dig. 413, Sec. 2.

2. It is said that the *demand* of payment was made by an agent of plaintiff instead of the plaintiff in person and that the *affidavit* was made by an agent.

To this we reply—that having been done by an *agent,* they were in contemplation of Law done by the *principal.*

3. It is alleged that there was no summons, or jury trial, or notice to the defendants, or declaration.

To this we reply that the act requires none and where the difficulty of knowing who the owners of steam boats are is considered, it would have been unreasonable in the Legislature to have required any notice to the defendants—none is required by the attachment law and none here.

The act does not require a declaration. If the defendants desire a jury trial—the act gives it to them upon their application to have it, and the act in the meantime arrests the proceedings under the Execution.

Instead of taking these proceedings in this case, the defendant waived it by giving a bond for the delivery of the boat on the day of sale.

4. The proceeding is contrary to the course of the Common Law.

To this we answer, this is no valid objection. All equity proceedings ; Attachment laws ; Tax sales ; Admiralty cases, and summary proceedings generally, are contrary to the course of the Common Law.

5. The Record and proceedings are unconstitutional in this— they violated the 5th and 7th articles of the Constitution. See amendments.

To this we answer that these articles are intended solely as limitations on the exercise of power by the Government of the United States, and are not applicable to the legislation of the States. Barron vs. the Mayor and City Council of Baltimore, 7th Peters, 243. Livingston vs. the Mayor of New York, 8 Wend., 85. Colt vs. Eves, 12. Conn. 243.

So of the 6th amendment that secures to the accused a trial by jury in all criminal prosecutions. Murphy vs. People, 2 Con. 815.

But suppose that there is such a constitutional prohibition on the Legislature here as that contained in the 7th article of the Constitution of the United States. This act is not a violation of it, 8 Yerger, 444, Morford vs. Barnes.

DOUGLAS, Chief Justice:

This case came up by writ of error from a judgment rendered by a Judge of the Circuit Court at Chambers at Apalachicola, in Franklin County, on the fifth day of June, A. D. 1847, under the peculiar provisions of the second section of an act of the General Assembly of this State, "approved January 4th, 1847," Thompson's Digest, 414, which provides that "whenever any captain, pilot, engineer, first or second mate, fireman, deck hand, merchant, builder, material man, or any other person employed in, or for materials, goods, or supplies furnished any steamboat, lighter or other water craft navigating or running on the Apalachicola river, and bay of Apalachicola, shall have any claim for services rendered on board the same, or for provision stores, or work and labor done, shall be desirous of collecting the same, upon the said debt becoming due and refusal to pay the same upon demand made, he, she, or they, may upon application to any judge of the Circuit Court in any county in which said steamboat, lighter or other water craft, may then lie, upon the same arriving at the landing, port, or place of destination to which the same has been freighted, make affidavit before the said Judge, of the amount due him, her, or them, for any labor, services or supplies by him, her, or them, done and performed, or provisions or stores furnished said steamboat, or other water craft, and specify the name thereof. Whereupon the said Judge shall grant an order to the Clerk of the Circuit Court of the County where the proceedings shall have been commenced requiring said Clerk to enter up judgment upon said affidavit, in favor of said applicant for the amount sworn to be due; and it shall be the duty of said Clerk to

issue instanter an execution therefor against the owner or owners of said steamboat, lighter, or other water craft, to be directed to the Sheriff of the County, whose duty it shall be forthwith to levy said execution upon the said steamboat, or other water craft, and advertise and sell the same under the same rules and regulations as govern Sheriff's sales in other cases. *Provided,* the said demand exceeds the sum of fifty dollars." (If said sum shall be for fifty dollars or less, then, and in that case the application shall be made to a Justice of the Peace, &c. Ibid.)

An affidavit was made before said Judge by one Luther D. Roberts, agent claiming for Roberts, Allen & Co., the sum of six hundred and fifty-seven 60-100 dollars, for iron work and material furnished said Flint River Steamboat Company, to and for the use of said steamboat. Whereupon the said Judge entered the following order: "At Chambers, June 5th, 1847, upon reading the foregoing petition and affidavit annexed, it is ordered that the Clerk of the Circuit Court of Franklin County, do enter up judgment in favor of Roberts, Allen & Co., in the sum of six hundred and fifty-seven 60-000 dollars, ($657 60-000,) amount sworn to against 'The Flint River Steamboat Company,' owners of steamboat Magnolia. In witness whereof I have hereto set my hand this day and year above written." This order officially signed by said Judge, was on the same day presented by the plaintiff to the Clerk of the Circuit Court of Franklin County for the entry of judgment as therein prescribed, and in pursuance thereof the said Clerk entered up judgment as follows, viz: "It is therefore considered by the Court that the plaintiffs recover against the said defendants the sum of six hundred and fifty-seven dollars and sixty cents, together with their costs by them in this behalf expended." And upon the same day an execution issued on this judgment which was levied on the said steamboat Magnolia. The steamboat was replevied until the first Monday in December, 1847, that being the first regular sale day after the said steamboat was replevied as aforesaid.

The plaintiff has assigned five several errors but we will only consider the *third*, which we deem decisive of the case, and which is as follows, to wit:

" There was no summons issued and served, nor was there any appearance by defendant, by self, or by attorney, nor was there any evidence to shew that defendant had any notice of the institution of

this suit, nor was there any declaration filed, or any assessment of damages by a jury."

The defendants in error contend that the statute above quoted does not expressly require either a summons, appearance by, or notice to the defendant, declaration or a jury trial. This is true but the defendant must have notice either actual or constructive, or no valid judgment can be entered against him. Hollingsworth *vs.* Barbour, *et al.*, 4 Peters, 470. Jones *vs.* Smith, 3 N. Hamp., 108. Hart *vs.* Huckins, 6 Mass. 399. Arnold *vs.* Tourtelot, 13 Pick., 172. Heathorn *vs.* Hulin, 3 J. J. Marshal, 432. Morris *vs.* Parker, 3 Littell, 268. Stayel *vs.* Westcott, 3 Day 349.

Statutes authorizing proceedings in derogation of the common law for the recovery of debts, generally provide specially, that notice of the institution thereof be given to the defendant. It has been said that our attachment law requires no notice. It is true that it requires no notice before a seizure of the property, but it expressly requires that notice of the institution of the suit shall be *personally* served upon the defendant, or *shall be published for three months* in some newspaper of the district, and if there be no newspaper, then a written advertisement in some public place. This notice by advertisement or writing is what the books call constructive notice, and our attachment law further provides that " the Court upon satisfactory proof of the service of such notice, and upon the finding of a *jury* of inquest may award judgment. It also requires a declaration and other pleadings." Thompson's Digest, 359, No. 1. Duval's Comp., 388, Sec. 14. It also provides that no attachment shall issue until the party applying therefor, his agent, or attorney, shall enter into bond with at least two good and sufficient securities, payable to the defendants, in at least double the debt or sum demanded, conditioned to pay all costs and damages the defendant may sustain in consequence of improperly suing out said attachment.— Thompson's Digest, 388, No. 4. Duval, 391, Sec. 10. Thus strictly guarded are the rights of defendants under our attachment law. The act upon which this proceeding is founded contains no such safeguards for the defendants, and does not therefore commend itself to favorable consideration. In this case it is not pretended that there was any actual notice, or indeed any other notice, but the advertisement of the sale of the steamboat by the Sheriff. It was suggested (though apparently not relied on,) that the defendant had notice by this advertisement, but this was after judgment, and be-

sides is not notice to the defendant to appear and defend his rights, but is only notice to purchasers. Constructive notice can only exist in cases coming fairly within the provisions of the statutes authorizing Courts to make orders of publication, and providing that the publication when made, shall authorize the Courts to enter a judgment or decree. Hollingsworth vs. Barbour, et al., 4 Peters Rep., 466. Chief Justice Marshal in the case of Meade vs. Deputy Marsh., &c., 1 Brock. 388, held that "it is a principle of natural justice which Courts are never at liberty to dispense with unless under the mandate of positive law that 'no man shall be condemned unheard, or without an opportunity of being heard.'" The statute under which this proceeding was commenced contains no such mandate. Although it does not expressly require, it does not prohibit the giving of notice, and if it is so framed that notice cannot consistently with its requirements be given, it may well deserve consideration whether it is not null and void, as being against the plain and obvious principles of common right. In Falconer vs. Montgomery and others, 4 Dall. 233, the Court said: "The plainest dictates of natural justice must prescribe to every tribunal the law, that 'no man shall be condemned unheard.' It is not merely an abstract rule, or positive right, but it is the result of long experience, and of a wise attention to the feelings and disposition of human nature." And in the case of the Commonwealth vs. the inhabitants of Cambridge, 4 Mass., 627, it was held to be "an essential principle of natural justice that every man have an opportunity to be heard in a Court of law upon every question involving his rights or interests before he is affected by any judicial decision of the question.— In the case of the Commissioners of Highways vs. Clow and others, 15 John. 537 to 539, the judgment of the Court of Common Pleas was reversed because the decision of the Commissioners had been reversed on an "ex parte" hearing without notice to them, although by the statute under which the proceedings took place no notice was by its terms required to be given. And in Corlies vs. Corlies, 8 Vermont 387 to 389, the same principle is maintained.

Hart vs. Huckins, 6 Mass. 400, was an action of entry sur disseisin, the process was served by a constable, who was only authorized by statute to serve process in personal actions; judgment was rendered by a Justice of the Peace which was carried up to the Common Pleas where it was affirmed, but the Supreme Court reversed it, on the ground that it being a real action, the constable had no au-

thority to serve the process, and consequently the tenant had no legal notice, and ought not to have been called, and that the judgment rendered on his supposed default was erroneous, and in reversing the judgment the Court said: "no Court is authorized to render a judgment or decree against any one, or his estate, until after due notice by service of process to appear and defend." And Hollingworth vs. Barbour, et al., above cited, 4 Peters 472. Denning vs. Corwin, 11 Wendell's Rep. 651 and Campbell and others vs. Brown, 6 Howard's Reps. 111, were reversed because the defendant had no notice, either actual or constructive.

With these authorities before us so directly in point and so conclusive, we should be (we think) fully justified in reversing this judgment, were there no other objection interposed than the want of notice. But on account of the extraordinary character of this statute, we have deemed it to be our duty to notice its provisions further. It is to be observed that the judgment is required to be entered upon the affidavit of the claimant alone; the execution to issue forthwith directed (if the judgment is in the Circuit Court,) to the sheriff, if in a Justices Court, to a constable, and in either case, it is made the duty of the officer forthwith to levy said execution upon the Steam Boat, or other water craft. No discretion is left with the officer; he must levy on and advertise and sell the steam boat or other water craft (unless the defendant should perchance happen to hear of the proceedings, and put in a defence under the onerous conditions imposed by the fourth section of the act) notwithstanding there might be an abundance of other property of the defendants within his reach (or even on board such steam boat or other water craft) to satisfy the execution. We see therefore that a steam boat of great value, might be seized by virtue of an execution for a debt of five dollars (or even a less sum) by a constable, or for any sum over fifty dollars by a Sheriff and detained until the next sale day, and then unless replevied must absolutely be sold, notwithstanding the whole cargo of such steam boat might be the property of the defendants, and consist as it naturally would of articles capable of being separated, so that the officer would have no difficulty in levying on property in proportion to the amount of the debt claimed.

Such a state of things would we think be against common reason, common right and the principles of common justice. And in the case of Ham vs. McClaws, 1 Bay's Reps. 93, it was held that "statutes passed against common right, and common reason are

null and void, so far as they are calculated to operate against these principles. "If consequences, or those manifestly against common reason arise collaterally out of a statute, it is void *pro tanto.*" 1 Harper, 101, cited in 3 United States Digest, 482, No. 4.

But the more serious objection to this statute is, its interference with the right of trial by jury. Under this statute a judgment may be entered up for any sum upon an open account and even without an exhibition of the account or any other voucher, upon the affidavit (as we have seen) of the plaintiff himself, without, too, even the verdict of a jury.

The right of trial by jury, says Judge Story, is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. 3 Story's Comm., 638, 639, Sec. 1760. "In *Magna Charta* it is more than once insisted on, as the principal bulwark of our liberties, but especially in chap. 29, by which it is provided: That no freeman shall be hurt in either his person or property ("*nisi per legale judicium parium suorum vel per legem terræ*") unless by lawful judgment of his peers or equals, or by the law of the land. A privilege" says Blackstone, " couched in almost the same words with that of the Emperor Conrad *two hundred years before.* And it was ever esteemed in all countries a privilege of the highest and most beneficial nature." 3 Black. Comm. 271. Chap. 23. Chapter 29 of *Magna Charta* is in force in this State by virtue of the act of Nov. 6th, 1829, adopting the common law and statute laws of England, &c., Thompson's Digest 21, Sec. 2. Duval's Comp. 357—and article 17 of the schedule and ordinance of the Constitution of this State continuing this latter act amongst others in force. The Constitution, Thompson's Digest page 2, Sec. 6, declares that " the right of trial by jury shall forever remain inviolate." The act of the General Assembly under consideration has been passed since the Constitution went into operation, and the question arises therefore whether it is not in violation of the provisions of that instrument. At the time when the Constitution was adopted and when it first became operative it is very certain that the plaintiff below could not have recovered this judgment without " a trial by jury," and the act under which it was rendered wholly dispenses with a jury and expressly authorises the Judge or Justice of the Peace (as we have seen) to render the judgment not only without

a jury, but upon the affidavit of the plaintiff alone and without notice to the defendant.

The Constitution says "the right of trial by jury shall forever remain inviolate," that is (as is very evident) the right shall (in all cases in which it was enjoyed when the Constitution became binding and obligatory) continue unchanged. It shall "remain inviolate." This term does not merely imply that the right of jury trial shall not be abolished or wholly denied, but that it shall not be *impaired*. The word inviolate is defined by approved *Lexicographers* to mean unhurt, uninjured, unpolluted, unbroken. Inviolate says Webster is derived from the latin word "*inviolatus*" which is defined by Ainsworth to mean, not corrupted, immaculate, unhurt, "*untouched*." From the plain and obvious meaning of these words therefore, we conclude that the General Assembly has no power to impair, abridge, or in any degree restrict the right of trial by jury as it existed when the Constitution went into operation. It will not we think be for a moment contended that the right of trial by jury is not by this act greatly impaired, abridged and restricted. Although it is not totally denied to the defendant, yet under this act he can only have a jury trial when after judgment he may happen to obtain information of the pendency of the proceedings before the sale takes place, and then only upon condition that he swears that he does not owe the whole or some part thereof, and even then only as to the part which he swears he does not owe. Another *condition* is interposed by the act to the enjoyment of this Constitutional right with which it might in many cases be difficult, if not utterly impossible for the defendant to comply, viz: he must give bond with good security, residing in the county where such proceedings may be had, to the plaintiff in double the amount claimed, conditioned for the payment of the eventual condemnation money and all costs thereon, an amount let it be recollected sustained *only* by the affidavit of the plaintiff on which the judgment is in the first instance entered and execution issued and levied.

Now it is very manifest that if the General Assembly may in the first instance dispense with "the right of trial by jury" altogether, and in the second interpose these two novel not to say dangerous and oppressive conditions, it may interpose others indefinitely. If the right in question may be denied in one kind of cases, or only allowed upon onerous conditions, it may in all cases. If it may in

Flint River Steam Boat Company, *vs.* Roberts, Allen & Company.

civil cases it may in criminal cases and even where the life of the accused may depend upon the issue.

Therefore the wisdom of that clause of the Constitution which prohibits "the right of trial by jury" from being injured or even "touched" is very apparent. This act allows judgment to be entered up for any amount (no matter how much or how complicated the accounts on which the claim may be based) without any other proof than the affidavit of the claimant himself, and in this case it was actually so entered (or rather upon the affidavit of an agent) without pleadings, without notice, without appearance by the defendant and *without a jury.*

The Court feel the importance of the sacred trust confided to them, of preserving the Constitution of the State unimpaired, and at the same time the delicate duty it imposes of declaring null and void any act of the General Assembly believed to be subversive of any of its provisions.

When however it is remembered with what jealous and scrupulous regard "the right of trial by jury" has ever been cherished and preserved by our Anglo Saxon ancestors, and by the Fathers of the revolution of 1776, a regard transmitted to us their descendants not only with unabated attachment, but if possible with increased interest and regard—a *Magna Charta* shielding every one in the enjoyment of life liberty and property: When these things are borne in mind and a Legislative act in its terms abridges this hallowed right, or its provisions are subversive of the principles of natural justice and against common reason and common right, the duty of the Court, though unpleasant and even painful, is too obvious to be doubted or denied. Such an one is the act entitled "an act giving a lien to steam boat men and others navigating the Bay and River of Apalachicola," approved January 4th, 1847, and we are compelled to consider it to be against the letter and spirit of the Constitution of this State, unsuited to answer reasonably, rightly or justly the purposes for which it was enacted, and that it is consequently null and void.

The judgment must therefore be and the same is hereby reversed, and the cause remanded to the Court below with directions to dismiss this suit.

*Per Curiam.*