## DIAMANTE URGA v. STATE OF FLORIDA

20 So. (2nd) 685             June Term, 1944
July 18, 1944               Special Division B
Rehearing granted October 17, 1944     On Rehearing February 2, 1945

*Whitaker Brothers* and *Cyrus W. Fields,* for appellant.

*J. Tom Watson* Attorney General, and *John C. Wynn,* Assistant Attorney General, for appellee.

PER CURIAM:

The appellant, Diamante Urga, on July 8, 1943, was informed against in the Criminal Court of Record of Hillsborough County, Florida, by the county solicitor for the violation of Section 797.01, Fla. Stats. 1941 (F.S.A.). When arraigned she entered a plea of not guilty to the information. On the issues made thereby testimony was submitted to a jury. After being instructed by the trial court upon the law

of the case, the jury returned a verdict of guilty as charged in the information. A motion for a new trial was made and denied. The trial court then sentenced the appellant to serve a term in the State prison at hard labor of two years and six months. She has perfected her appeal therefrom to this Court.

The provisions of Section 797.01, *supra*, are viz:

"797.01. Performing Abortion; Punishment.—Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the State prison not exceeding seven years, or by fine not exceeding one thousand dollars."

Pertinent portions of the information are viz:

". . . that Diamante Urga, late of the County of Hillsborough aforesaid, in the State aforesaid, on the 26th day of June, in the year of our Lord one thousand nine hundred and forty-three with force and arms at and in the County of Hillsborough aforesaid, did willfully, unlawfully and feloniously administer certain poisons, drugs, medicines and other noxious things to Clara Belle Shaw, *who was then and there a woman pregnant with child* and did unlawfully use certain instruments and other means, the nature of which other means is to the county solicitor unknown, in and upon the said Clara Belle Shaw, with the intent to procure the miscarriage of the said Clara Belle Shaw, in consequence whereof the said Clara Belle Shaw did not die, against the form of the statute in such case made and provided, to the evil example of all others in the like case offending, and against the peace and dignity of the State of Florida; . . . " (Italics supplied)

Counsel for appellant pose five questions for adjudication on this appeal. It is apparent that these questions can or may be disposed of or ruled upon under two or possibly three separate assignments:

First: Where an information contains unnecessary descriptive allegations, is the State required to prove such allegations?

Second: Where an information in charging the offense of abortion alleges that the woman upon whom it was performed "was then and there pregnant with child," and at the trial the State introduces witnesses in chief whose testimony is confined to proving this allegation; and the entire theory and structure of the State's case, from the charge laid in the information to the testimony presented before the jury was that such pregnancy existed at the time the defendant committed said alleged acts, under this state of the case, does the question of pregnancy become a material issue?

Third: When testimony is introduced by the prosecution in an attempt to prove its theory of a case and such testimony is in fact admissible, and the defendant meets that theory with her proofs and the trial judge arbitrarily and of his own motion withdraws such theory and testimony from the consideration of the jury, does this not amount to an impairment of defendant's right to a jury trial?

The statute, *supra,* under which the information was drafted, was construed by this Court in the case of Eggart v. State, 40 Fla. 527, 25 So. 144. It was there contended that the information should allege, not only that the woman was pregnant, but was quick with child, and it was argued that at the common law it was no crime to procure the miscarriage of a woman with her consent. The answer to the contention was that the statute under which the indictment was drawn as enacted by the Legislature made material changes in the then existing common law rule applicable to the crime of abortion.

It was said: "Our statute (Section 797.01 (F.S.A.), like those from which it was borrowed, was designed to punish the *attempt* to procure the miscarriage of any woman by any means mentioned in the statute, whenever such attempt is made with an unlawful intent." (Emphasis supplied). See McDonald v. State, 70 Fla. 250, 70 So. 24. Weightnovel v. Steele, 46 Fla. 1, 35 So. 856.

It is true that the statute, *supra,* does not, nor do decisions construing the statute against abortion, make the allegation: "who was then and there a woman pregnant with child," appearing in the information, an essential element of the crime of abortion. Evidence was adduced by the State during the trial to establish this non essential allegation in the information. The testimony of an Army physician is to the effect that Clara Belle Shaw was pregnant on June 26, 1943; that she had applied certain home remedies calculated to effect an abortion; the physician advised that she discontinue these practices, but she went to the office of appellant and arranged for her services. It is an inference deductible from the testimony that Clara Belle Shaw desired an abortion. We observe disputes and conflicts in the evidence between the state witnesses and defendant as to what was said and done in the office of the appellant, but it harmonizes on minor points, such as they paid the appellant $60.00 and made three separate trips to the office, and the sister was present at the time of the alleged operation.

Pertinent parts of the challenged instructions are viz:

" . . . The gist of the statutory offense is the intent to terminate the creation by nature of a child and the intent to bring about the miscarriage of a woman. That is what the statute is intended to prohibit and if it is done with that intent and if the means employed come within the scope of the statute, of course it follows that it is immaterial as to whether or not the woman was pregnant. But it must follow from that, of necessity, that unless the accused has that intent, and believes that the woman is pregnant, then the accused would not be guilty of violating the statute. It might be that if a person who was not a licensed physician operated upon a woman for the purpose of removing a dead foetus, or for the purpose of removing any other product of pregnancy, that the person doing that might be guilty of practicing medicine without having been properly licensed; that is not the charge in this case. This information only has one count charging the violation of this statute.

"So if you find, or have a reasonable doubt, that the accused was only operating to remove a dead foetus, or believed

that the party, Clara Belle Shaw was not pregnant, or believed that the foetus was dead, and the intent was only to operate to remove the foetus or other product of pregnancy, then the unlawful intent required by the statute could not exist. On the other hand, as I have said, it doesn't make any difference whether or not this Clara Belle Shaw was pregnant, it does not make any difference whether or not the foetus was in fact alive or dead, if the defendant believed that Clara Belle Shaw was pregnant, and if she intended to procure a miscarriage on Clara Belle Shaw, and employed the means charged in the information, then she would be guilty.

"It is also the law that the consent of the other party is immaterial; in other words, no woman can legally confer consent to any one to produce an abortion."

It is contended that the instructions, *supra,* resulted in an undue advantage against the appellant and in behalf of the prosecution because the jury had heard the evidence offered in support of the condition of pregnancy; the home remedies employed by the prosecutrix to effect an abortion; the details of her treatment by a physician; her consistent bleeding and continuous pains, were impressive on the jury; the representation of the husband to the defendant in effect that they had been told by doctors that she (the prosecutrix) was not pregnant and that they were not interested in having an abortion or miscarriage performed, but sought her (the appellant's) services for the purpose of obtaining relief from severe and continuous pains and constant bleeding, which had been sought through treatment by a physician; that the packing of the prosecutrix by the appellant was to stop the flow of blood and to ease the pains, and these activities on the part of the appellant were not within the inhibitions of the statute.

Favorable inferences and deductions on the part of the jury from all the evidence in behalf of the appellant, it is contended, were destroyed by the court's instructions, and that the legal effect thereof was to deprive the appellant of rights vouchsafed by the fundamental law. Authorities cited and relied upon are viz: Harrison v. State, 149 Fla. 365, 5 So. (2nd) 703; Hanover Fire Ins. Co. v. Lewis, 28 Fla. 209, 10 So.

297; Flint River Steam Boat Co. v. Roberts, Allen & Co., 2 Fla. 102, 48 Am. Dec. 178; Sections 3 and 4 of the Declaration of Rights of the Florida Constitution; and Dwyer v. State, 93 Fla. 777, 112 So. 92, in which we held that when a charge as given by a trial court tends to reserve from consideration of the jury a material question of fact upon which there is a conflict or dispute, then such a charge so given constitutes reversible error. This rule is sanctioned by many of our early decisions applicable to the criminal law.

Cases are cited to sustain the conclusion that the allegation in the information viz: "who was then and there a woman pregnant with child," was not only material, but placed on the State the burden of establishing by competent testimony, with other material allegations of the information, to the satisfaction of the jury beyond a reasonable doubt the truth thereof. The cited authorities are largely from other jurisdictions. The Supreme Court of Georgia, in Fulford v. State, 50 Ga. 591, had before it the question of whether or not a certain allegation appearing in an indictment was material or surplusage. It is a well reasoned case in which the court held that the allegation was not surplusage but material and the burden was on the State to establish the same and it became a jury question. The cited authorities have been carefully examined.

Available is more than one answer to the posed questions and the several contentions presented thereunder: (1) In the case of Eggart v. State, *supra,* when construing the statute under which the information in the case at bar was drafted, we held that an allegation, that the woman was pregnant with child, was not material, although it was material at the common law, and an information or indictment following the language of the statute was sufficient. (2) The appellant, as shown by the record, upon arraignment did not object to the surplusage appearing in the information by motion to quash. Section 909.01, Fla. Stats. 1941 (F.S.A.), prescribes the time when a defendant in a criminal case shall by motion to quash object to the legal sufficiency of an information or indictment. Section 909.06, Fla. Stats. 1941 (F.S.A.), provides that if a defendant fails or omits to file a motion to

quash an information or indictment before or at the time he pleads thereto, "he shall be taken to have waived all objections which are grounds for a motion to quash." (3) Section 906.24, Fla. Stats. 1941 (F.S.A.), provides: "Surplusage.— Any allegation unnecessary under existing law or under the provisions of this Chapter may, if contained in any indictment, information or bill' of particulars, be disregarded as surplusage." (4) When the parties were taking testimony before the trial court and jury, as shown by the record, counsel for appellant failed and otherwise omitted to interpose seasonable objections and then obtain a ruling of the trial court on the legal admissibility of the State's evidence ostensibly offered to establish pregnancy on the part of the prosecutrix. (5) The prosecutrix and her sister testified that the appellant performed an operation on the prosecutrix to obtain an abortion on the third visit to the office. This was denied by the appellant. (6) Dr. Bartlett treated the prosecutrix and testified that she had recently aborted. We therefore conclude that the three questions posed are without merit.

Question four of appellant goes to the sufficiency of the testimony to sustain the verdict, while five suggests that the jury was influenced by matters dehors the record, because the verdict by it rendered is contrary to the instructions of the trial court upon the law of the case. These questions may be considered and disposed of as one. The answer to these two questions is the testimony of Mrs. Ruth Strickland, a sister of the prosecutrix. She went with her sister and brother-in-law to the office of the appellant on the evening of June 26, 1943. The witness and the prosecutrix went into the appellant's operating room, while the husband waited outside.

The appellant placed the prosecutrix on the operating table and proceeded with the operation, which lasted about twenty minutes. "I sat right there close enough for me to put my hand right on my sister when she was performing it." The witness described the instrument employed by the appellant in the operation; observed the details of the operation and described the substance removed by the appellant from

the prosecutrix. The prosecutrix went home and some few hours afterward developed septicemia or blood poison. One of the physicians testified that the foetus was alive prior to the operation.

The defendant below, as a witness, denied that she performed an abortion on the prosecutrix, but stated that her treatment of the prosecutrix was limited to packing the womb to relieve the continuous pain and to prevent the further flow of blood. The prosecuting witness testified that the appellant performed an abortion on her and that her husband paid her $60.00 and agreed to pay an additional five dollars. Dr. Bartlett treated her shortly thereafter and stated that the prosecutrix had signs of septicemia. "Q. From your examination could you tell whether an abortion had been performed on her recently?" "A. It looked like there had been some interference there from the mouth of the womb. Also there was a sore or necrosis." "Q. Doctor, from your medical experience, you couldn't positively swear before this jury that this woman was ever pregnant, could you—within the last two months before she entered the Municipal Hospital?" "A. Yes, sir." "Q. You can swear that she was pregnant?" "A. Yes, sir."

We find ample testimony in the record to support the verdict of the jury. It cannot be said, when considering the record in its entirety, that the jury in its deliberation upon the verdict was influenced by matters dehors the record, or that it was contrary to the instructions of the trial court upon the law of the case.

The judgment appealed from is affirmed.

TERRELL, BROWN, CHAPMAN and THOMAS, JJ., concur.

BUFORD, C. J., absent.

PER CURIAM:

Pursuant to a previous order made, the Court heard oral arguments on part of counsel for the parties. The entire record has been carefully studied and re-examined in the light of the arguments made, coupled with the several con-

tentions as expressed in the brief for appellant this day filed on re-argument. It is our conclusion that a fair and lawful trial of the appellant was had in the lower court and the record is reasonably free from error, and accordingly our previous opinion and order are hereby adopted on rehearing and in all respects adhered to.

It is so ordered.

CHAPMAN, C. J., TERRELL, THOMAS and SEBRING, JJ., concur.

BROWN, BUFORD and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

I do not agree that the record is reasonably free from error. When due regard is given to the charge of the court withdrawing certain evidence from the jury, then I think the evidence is insufficient.

BUFORD, J., concurs.