189 So.2d 656 (1966)
Onello Garcia RODRIQUEZ, Efrain T. Suarez, Julieta Maria Calleiro, Abigail Margarita Calleiro Casanueva and Yolanda Venegas Calleiro, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 65-59, 65-60, 65-256 to 65-258.
District Court of Appeal of Florida. Third District.
June 29, 1966.
On Denial of Rehearing September 20, 1966.
*657 Walter E. Gwinn, Miami, for appellants.
Earl Faircloth, Atty. Gen., and Arden M. Siegendorf, Asst. Atty. Gen., for appellee.
Before PEARSON, BARKDULL and SWANN, JJ.
On Denial of Rehearing in No. 65-60 September 20, 1966.
SWANN, Judge.
This is a consolidated appeal from judgments and sentences entered following a jury trial in the Criminal Court of Record of Dade County, Florida.
Essentially, the facts are that two policewomen from Tampa, Florida were enlisted by the City of Miami Police Department and the State Attorney's Office of Dade County, Florida, to try to get into the Ayala Clinic and make arrangements for an abortion. Policewoman Williams called the Ayala Clinic about an abortion and talked to a person who identified himself as Dr. Ayala. The policewoman made an appointment for the following day and was quoted a price of One Thousand Dollars for the operation. On the appointed day, Policewoman Williams and Policewoman Ellison entered the clinic and consulted with a man later identified as the appellant Suarez. At the same time, other police officers were watching the front and back of the clinic. Policewoman Ellison waited in the reception room while Policewoman Williams was taken into an examination room, where a pelvic examination was conducted by the appellant Suarez. There were no instruments used in the examination and there was a conflict in the testimony as to whether there were any instruments in the examining room at the time of the examination. Policewoman Williams remained fully clothed at all times, with the exception of her panties, which were removed during the examination. Following the examination, appellant Suarez explained the procedure by which he was to bring about the abortion. At this point, Policewoman Williams told Suarez that the money required for the operation was in her purse which Policewoman Ellison was holding in the waiting room. Policewoman Ellison brought the money into the examination room and it was given to Suarez. She then left the building and informed the officers outside that Policewoman Williams was supposed "to get a needle".
The police officers entered the clinic through the public front door, which was left open by Policewoman Ellison, and proceeded into the clinic. Upon reaching the waiting room door, the officers knocked and announced that they were police officers and from the State Attorney's office. After waiting approximately fifteen to thirty seconds, the officers kicked down the door. They had no search warrant for the premises nor warrants for arrest. No announcement of purpose was made prior to kicking down the door. The officers proceeded down a hallway and came upon another door, which was also kicked down without announcement of authority or purpose. There was testimony that approximately five doors were kicked down without an announcement of their purpose.
The officers met Suarez in the hallway coming toward them from the direction of the first door that was kicked down. He was placed under arrest for conspiracy to *658 commit an abortion and attempted abortion on Policewoman Williams. The other appellants were arrested when found in various parts of the clinic.
The appellants were tried for attempted abortion and conspiracy to commit abortion All of the appellants were convicted of conspiracy to commit abortion, and in addition, Suarez was convicted of attempted abortion. This appeal followed.
Prior to the trial, the appellants moved to suppress the evidence seized in the raid and the trial court denied the motion. The appellants have assigned this as error and assert as authority for reversal Section 901.19(1), Florida Statutes, F.S.A., and Benefield v. State, Fla. 1964, 160 So.2d 706.
Section 901.19(1) provides:
"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose." (Emphasis supplied)
The State concedes that the arresting officers did not announce their purpose before breaking open the doors in the building.
In Benefield, supra, the Supreme Court of Florida set forth the requirements for entry of a building to make an arrest:
* * * * * *
"* * * When an officer is authorized to make an arrest in any building, he should first approach the entrance to the building. He should then knock on the door and announce his name and authority, sheriff, deputy sheriff, policeman or other legal authority and what his purpose is in being there. * * * If he is refused admission * * * he may then break open a door or window to gain admission to the building and make the arrest. * * *" (Emphasis supplied.)
* * * * * *
"* * * The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. * * *" (Emphasis supplied.)
* * * * * *
The appellee counters that the court in Benefield, supra, clearly sets forth four specific exceptions to this rule on page 710 as follows:
* * * * * *
"As we interpret the common law authorities in relation to § 901.19(1), Florida Statutes, F.S.A., we conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Time and experience will no doubt suggest other exceptions * * *." (Emphasis supplied)
* * * * * *
It is contended by the appellee that under the second exception set forth above the officers were justified in their actions since they believed that the policewoman within the clinic was in imminent peril of bodily harm.
The only possible evidence to justify such a belief was the statement made by *659 Policewoman Ellison to the arresting officers that "he is going to stick her with a needle."
The arresting officers knew and the policewoman testified that if any attempt was made to begin an abortion that she should place him (Suarez) under arrest. The testimony further reveals that there was never any indication that a needle was about to be given to Policewoman Williams in the presence of Policewoman Ellison or that Suarez attempted to give her a shot.
None of the officers testified that they believed Policewoman Williams was in "imminent peril of bodily harm". Under the particular facts in this case, there appears to be no valid reasons to justify such a belief; therefore, the general rule of Benefield should apply, and not the exception.
Since Section 901.19(1) was not complied with the fruits of the subsequent search should have been excluded by the trial court upon proper motion.
While the appellee concedes that appellant Suarez had standing to challenge the validity of the search and seizure, they contend that there was no showing of the requisite possessory interest in the premises by the other appellants so as to allow them to object. There is no need to determine whether the other individual appellants had standing, since we find merit in the appellant's contention that the evidence is legally insufficient to sustain a conviction for the crime of conspiracy to commit an abortion on Policewoman Williams.
The testimony indicates that all occurrences and transactions between Policewoman Williams and Suarez were done outside the presence of the other appellants. None of the other appellants ever saw or talked to Policewoman Williams. There is no evidence that any of the other appellants knew her; or that they knew she was even in the clinic at the time of the alleged attempted abortion; or that they participated in any way in the actions toward Policewoman Williams.
While there was some testimony about medical services rendered to other persons in the clinic by some of the appellants, they were not tried for any other offense, except as to the alleged conspiracy to commit an abortion on Policewoman Williams.
As there was no direct testimony to link the other appellants to the attempted abortion of Policewoman Williams, any inferences of a conspiracy to commit an abortion on her would be by purely circumstantial evidence.
When circumstantial evidence is relied upon for conviction in a criminal case, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused, and no one else, committed the offense. It is not sufficient that the facts create a strong probability of, and be consistent with guilt; they must be inconsistent with innocence. Simmons v. State, 1930, 99 Fla. 1216, 128 So. 486; Lee v. State, 1928, 96 Fla. 59, 117 So. 699; Davis v. State, 1925, 90 Fla. 816, 107 So. 245. The facts herein may have created a strong probability of guilt of conspiracy to commit abortion, but they were not consistent with guilt and inconsistent with innocence.
For the reasons stated, the judgment and convictions of the appellants of conspiracy to commit abortion should be reversed and the appellants discharged; and the judgment and conviction of the appellant Suarez of attempted abortion should be reversed and remanded for a new trial.
BARKDULL, Judge (concurring in part).
I concur with so much of Judge Swann's opinion that finds insufficient evidence to convict the appellants of conspiracy to commit abortion which would discharge them from the cause. However, I am unable to agree relative to the appellant *660 Suarez. He was convicted of attempted abortion and the opinion finds that the trial court committed error in refusing to suppress the evidence seized at the time of his apprehension.
It appears to me that the pivotal point in this record is whether or not the law enforcement officers were justified in breaking down an inner door of a medical clinic, after having been informed that the police woman inside was about to get a shot and abortion, thereby effecting a legal arrest rendering the evidence seized admissible.
The question of the validity of the right of entry was properly a matter to be determined by the trial court on a motion to suppress, because what constitutes a valid arrest so as to support an incidental search is a mixed question of law and fact to be determined by the trial court upon due consideration of the circumstances and manner under which the search is made. See: Haile v. Gardner, 82 Fla. 355, 91 So. 376; Brown v. State, Fla. 1950, 46 So.2d 479; Urso v. State, Fla.App. 1961, 134 So.2d 810; Diaz v. State, Fla.App. 1965, 181 So.2d 351. The trial court's ruling on the motion to suppress in the instant case comes to this court with a presumption of correctness and, in testing the accuracy of the trial court's conclusions, we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in a light most favorable to sustain these conclusions. See: Cameron v. State, Fla.App. 1959, 112 So.2d 864; Savage v. State, Fla.App. 1963, 156 So.2d 566, 1959. In so doing, if the record reveals that the facts known to the arresting officers before their entry are not inconsistent with a good faith belief on their part that compliance with § 901.19(1) Fla. Stat., F.S.A., is excused, their failure to comply with the formal requirements of said section does not justify the exclusion of the evidence they obtain. See: People v. King, 140 Cal. App.2d 1, 294 P.2d 972; People v. Ramsey, 157 Cal. App.2d 178, 320 P.2d 592. This is so because the officers must decide this question ordinarily on the spur of the moment and without benefit of hindsight. See: Williams v. United States, 9th Cir.1959, 273 F.2d 781, Cert. denied 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868; People v. Maddox, 46 Cal.2d 301, 294 P.2d 6; People v. Morris, 157 Cal. App.2d 81, 320 P.2d 67; Reid v. United States, D.C.Mun.App. 1964, 201 A.2d 867; State v. Smith, 37 N.J. 481, 181 A.2d 761, Cert. denied 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055. It was brought out in the evidence before the trial judge, on the motion to suppress, that immediately prior to making entry into the clinic the officers were informed "`The doctor has the money, and Barbara is inside, and he is going to stick her with a needle.' She said the doctor was going to stick her with a needle.", and believed that the police woman was about to be injured, to wit:
* * * * * *
"Q (By Mr. Gwinn) Mr. Daugherty, you knew too  you say that you wanted to make sure about Mrs. Williams, and that was it that you wanted to go in for?
"A The reason I went in hastily?
"Q Yes.
"A I wanted to make sure Mrs. Williams was not physically harmed or otherwise in any way."
* * * * * *
It appears to me that these facts, known to the officers at the time they broke in, are consistent with a good faith belief on their part that they were excused from compliance with § 901.19(1) Fla. Stat., F.S.A., pursuant to the second exception outlined in Benefield v. State, Fla. 1964, 160 So.2d 706, which is relied upon so heavily in Judge Swann's opinion; and the officers were justified in making their entry. Furthermore, it must also be noted that in this latter cited case there was no contention that the officers at any time announced their authority nor their purpose, whereas in the instant case the officers did announce *661 their authority and they did wait for a response prior to breaking the interior door.
Therefore, I would affirm the conviction of the appellant Suarez for attempted abortion.
PEARSON, Judge (specially concurring).
I concur with so much of the opinion of Judge Swann that reversed the convictions of the appellants of the crime of conspiracy to commit abortion, and Judge Barkdull's opinion affirming the conviction of the appellant Suarez as to the crime of attempted abortion.
Therefore, the verdicts, judgments, and sentences under review in Case Nos. 65-59, 65-256, 65-257 and 65-258 be and they are hereby reversed and the appellants discharged. So much of the verdict, judgment and sentence here under review in Case No. 65-60 as relates to the crime of conspiracy to commit abortion be and the same is hereby reversed, but so much of said verdict, judgment, and sentence as relates to the crime of attempted abortion by the appellant Suarez be and the same is hereby affirmed.

ON REHEARING in No. 65-60.
PER CURIAM.
The appellant has filed a petition for rehearing, addressed to the majority opinion which affirmed his conviction upon the charge of attempted abortion. In and by the petition addressed to this opinion, it is urged that the court overlooked and failed to consider the points raised on appeal as to the sufficiency of the information to charge the crime and the sufficiency of the evidence to support the charge. These points were examined originally and have been examined subsequent to the filing of the petition for rehearing, and are found to be without merit. See: Gustine v. State, 86 Fla. 24, 97 So. 207; Urga v. State, 155 Fla. 86, 20 So.2d 685; Pittman v. State, Fla. 1950, 47 So.2d 691; People v. Berger, 131 Cal. App.2d 127, 280 P.2d 136; People v. Woods, 24 Ill.2d 154, 180 N.E.2d 475.
Therefore these and the other grounds of the petition for rehearing having been found to be insufficient, the same be and it is hereby denied.