325 So.2d 431 (1975)
Rufus Roy SHINALL, Appellant,
v.
Catherine D. PERGEORELIS, Appellee.
No. V-308.
District Court of Appeal of Florida, First District.
December 3, 1975.
Rehearing Denied February 6, 1976.
*432 A.C. Soud, Jr., Jacksonville, for appellant.
Roy E. Dezern, Jacksonville, for appellee.
RAWLS, Judge.
May an unwed pregnant woman enter into an agreement with the alleged putative father to release him from liability in a paternity suit? The trial judge answered no. We agree and affirm.
In January of 1971, appellee, Catherine Pergeorelis, a single woman, and appellant, Roy Shinall, a married man, sealed a friendship by commencing to engage in sexual intercourse. The trial judge, from competent substantial evidence, found that thereafter this illicit adventure continued for a long period of time, resulting in Catherine becoming pregnant and giving birth to a female child on May 18, 1973. Catherine testified that the child was conceived on or about August 19, 1972. On September 22, 1972, Catherine contacted an atttorney for the purpose of instituting a complaint in paternity against Roy. The complaint was filed on September 26, 1972, and assigned Case No. 72-8980. On November 14, 1972, as a result of negotiations, Roy executed an instrument acknowledging that the child Catherine was carrying "is my child" and agreed to pay her $500.00 for "dropping Case #72-8980". This instrument was scrivened by the hand of Catherine's attorney and witnessed by him. Catherine's attorney testified that Catherine entered into the foregoing agreement over his vigorous objection It is undisputed that at this point in time, it was the intention of the parties to reach a final settlement as to any further claims against Roy with regard to the grievances voiced by Catherine in her paternity suit.[1] On September 6, 1973, Catherine instituted the instant complaint to determine paternity of her child. Roy answered by general denial and alleged the affirmative defenses of release, settlement and estoppel. The trial court granted a motion to strike the affirmative defenses upon the ground that such a release is against the public policy of the State of Florida.[2]
The trial judge was eminently correct in his holding as to the long enunciated public policy of the State of Florida. As late as September, 1972, this Court in Walker *433 v. Walker[3] recognized that an illegitimate child's right to support from its putative father cannot be contracted away by its mother, and that any release executed by her is invalid to the extent that it purports to affect the rights of the child. The question now arises as to whether this long espoused public policy by the sovereign of Florida still prevails.
Subsequent to our decision in Walker, supra, the Federal Supreme Court on January 22, 1973, held in Roe v. Wade[4] that it was no longer a crime for a woman to terminate a pregnancy by abortion and that during the first three months of gestation, as between the mother and the state, this decision was controlled solely by the mother.[5] Appellant reasons citing Roe v. Wade, supra, that since a putative father has no "right" to participate in the decision of a woman to terminate the pregnancy, he has no interest in the fetus; an unborn child is not a person within the Fourteenth Amendment; and the mother may exercise her "right of privacy" by any means she desires, including negotiating a full release of liability in favor of the putative father which is binding upon the fetus as well as the mother. The position of appellant is not wholly without logic. In rejecting appellant's logic, we must pause to emphasize that Roe v. Wade, supra specifically did not deal with the father's right to participate in an abortion decision.[6]
However, the Fifth Circuit Court of Appeals[7] has recently declared Florida Statute 458.22(3) which requires that prior to an abortion: 1) a pregnant married woman obtain the written consent of her husband (if not living voluntarily apart from the wife); and 2) an unmarried pregnant minor female to obtain written consent of her parents, custodian, or legal guardian unconstitutional. In reaching its conclusion, the Court opined:
"There is, of course, a more fundamental reason for our conclusion that the father's interest in the fetus is not sufficiently weighty to prevent the exercise of the woman's fundamental right. Since the fetus is not a person [citing Roe, supra], neither is it a `child.'"
Using the rationale of the Fifth Circuit as espoused in Poe v. Gerstein, it is inescapable that if a father has no right to determine the destiny of the fetus and the mother is solely vested with this right of life or death, then surely the mother possesses the exclusive right to destroy or otherwise bargain away any potential rights of the fetus including support. To hold otherwise would fly in the face of the equal protection provisions of our State and Federal Constitutions.
The rationale of the Fifth Circuit Court of Appeals as espoused in Poe v. Gerstein, supra, obviously collides with the long-standing public policy of this State as enumerated in Walker v. Walker, supra. Not only does it collide with the long-standing public policy of the State of Florida and other states of this Nation, but it ignores the recognition in Roe v. Wade, supra, that: "Similarly, unborn children have been recognized as acquiring rights or interests by way of inheritance or other devolution of property, and have been represented by guardians ad litem."[8]
This separation of the abortion issue from the unborn's property right which was recognized in Roe v. Wade, supra, is not new to the legal system of this country. The property rights of an unborn are as old *434 as the common law itself.[9]Blackstone[10] in his commentary stated:
"An infant in [sic] ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born."
An illegitimate unborn or born has a right to support from his putative father just as a legitimate child has a right for his father to provide his support.[11] Our research reveals that courts of other jurisdictions have recently held following this Court's reasoning in Walker v. Walker that an illegitimate's right to support from his putative father cannot be contracted away by his mother.[12] The factual situation in Reynolds v. Richardson, supra, is strikingly similar to the instant cause. In that case, after an illicit relationship of some period of time, the mother gave birth to an illegitimate child. Shortly thereafter, she filed bastardy proceedings against the putative father. The mother, the maternal grandparents, their attorney, the putative father, and his attorney met and negotiated a settlement in which the mother and the maternal grandparents in exchange for $500.00 released all claims that they had against the putative father which arose out of the birth of the child, and they agreed to accept the maintenance and support of the child. Some years later, the mother filed a second paternity action, and the father raised as a defense the previously executed release. Upon appellate review, the Tennessee Court of Appeals held that the release was valid only as to the mother's rights against the putative father and did not affect the child's right to support.
We reaffirm our holding in Walker v. Walker, supra, and affirm the judgment of the trial court.
Affirmed.
McCORD, J., specially concurs.
BOYER, C.J., dissents.
McCORD, Judge (concurring specially).
I agree with the majority opinion with the exception that I am not prepared to in effect rule at this time that if the opinion of the Fifth Circuit Court of Appeals in Poe v. Gerstein is upheld by the U.S. Supreme Court and if the quoted statement from the Fifth Circuit's opinion becomes the law of this state, a mother will then have the exclusive right to bargain away support for her child.
BOYER, Chief Judge (dissents).
I respectfully dissent. It is inconsistent and illogical, it appears to me, to hold that the mother of an unborn fetus may, with impunity and contrary to the desires of its father, kill the fetus and thereby eliminate its need for support while at the same time holding that she may not, at the identical stage of pregnancy relieve the same father from the obligation to support. I cannot fathom how support is more important than life itself.
The majority bases its decision squarely upon this court's opinion in Walker v. Walker.[1] That opinion was based upon, and announced, the public policy of the *435 State of Florida at that time. That public policy was admirable, sound and bottomed upon the general law and accepted standard of morals then prevailing, which held the life of an unborn child inviolate. It was then the law of this state that no woman could legally confer consent to anyone to produce an abortion and that the mere attempt to procure a miscarriage was unlawful, even though it may ultimately be determined that the woman seeking to abort was not actually pregnant.[2] But, alas, that was before our present era of "enlightenment". As acknowledged by the majority, since that time the Supreme Court of the United States has declared it to be the law of the land that a woman may terminate a pregnancy by abortion (during the first three months of gestation) solely in her own discretion, capriciously or otherwise; holding that an unborn fetus in not a "person" as used in the Fourteenth Amendment.[3] Since that famous (or infamous) decision we are told that a fetus is voluntarily destroyed by the mother in whose womb it is incubating at a rate greater than one per minute. To bring the enormity of the situation into understandable perspective, we are informed that in California alone more babies are destroyed each year than were American servicemen killed in the Viet Nam, Korean, Spanish, Mexican, 1812 and Revolutionary wars all combined; that in all the wars since the founding of this country there have been 667,286 American battle deaths while in one year alone over 600,000 unborn fetuses were voluntarily destroyed by abortion. It therefore becomes crystal clear that the "law of the land" which presumably reflects the morality and public policy of the nation, has substantially changed since this court rendered its opinion in Walker v. Walker, supra.
Indeed, within the past 120 days the United States Court of Appeals, 5th Circuit,[4] has held[5] that since a fetus is not a person neither is it a child; further holding that the father has such an insignificant interest in the fetus that a state law requiring his consent as condition precedent to a lawful abortion procured at the instance of the mother is unconstitutional. It follows, therefore, it seems to me, that if a father has no right to determine the destiny of the fetus and the mother is solely vested with the right of life or death, then surely the mother possesses the right to destroy or bargain away any potential rights of the fetus to ultimate support.
The mother of an unborn child has long been authorized to contract away its right of support by its natural father through the adoptive process.[6]
The law is generally that a person may not accomplish by indirection that which may not be legally accomplished directly. In that regard it is illogical to hold that a mother of an illegitimate child may deprive the father of that child of all rights *436 incident to the child and thereby relieve him of any obligation incident to the support of the child by the simple expedient of signing a consent to the child's adoption without the father's joinder, while holding on the other hand that the same mother may not release the same father from paying to the mother support for that child.
There is still another reason, in my view, for reversal in this case. As stated in the majority opinion, the trial court granted a motion to strike appellant's affirmative defense of release, settlement and estoppel. I am of the view that such defense contained defensive matter worthy of consideration.[7] It is noted that the appellee in this cause is Catherine D. Pergeorelis, the mother of the subject illegitimate child. The action giving rise to this appeal was commenced by her individually, not as a guardian nor as next friend. The final judgment here appealed requires monthly payments to be paid to her individually. Walker v. Walker, supra, involves "the rights of a helpless child". The subject child is not a party to this action. If we are to hold that notwithstanding our "era of enlightenment" a fetus is indeed a child with certain inalienable rights then I am of the view that the rights of the child should be enforced by the child via a guardian or next friend and should be protected accordingly.
Somehow, somewhere and sometime the rights of the male participant in the activities giving rise to pregnancy must be recognized and protected. Simple justice requires no less. The majority hold that his unborn child may be destroyed by its mother without his consent and even against his will, but that same mother cannot release him from paying to her support for the child. Such a holding is, in my view illogical, incongruous and unjust. I would reverse.
NOTES
[1] The handwritten release signed by appellant states: "I, Rufus Roy Shinall, agree to pay Catherine D. Pergeorelis the sum of $500.00 for hospital and Doctor bills incurred by her in the birth of the child she is carrying which is my child in consideration for her dropping Case #72-8980, Division M, Circuit Court of Duval County." It should be noted that the release does not direct itself to the question of support of the future child; however, the scrivener of the release, Catherine's attorney, testified without refutation that the intent was that Catherine would release all rights including the child's right to future support.
[2] During trial, the judge stated: "... and I think that this instrument possibly goes further, it substantiates the fact that it has been consummated as of this particular time as to any cause of action she has, but I don't see how it could possibly affect an innocent child."
[3] Walker v. Walker, 266 So.2d 385 (Fla.App. 1st 1972).
[4] Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
[5] Id., 410 US. at 165, 93 S.Ct. at 733, 35 L.Ed.2d at 184, n. 67 where the Court notes that the opinion in no way touches on father's rights in an abortion decision.
[6] Id.
[7] Poe v. Gerstein, 517 F.2d 787 (5th Cir.1975).
[8] Roe v. Wade, 410 U.S. at 162, 93 S.Ct. at 731, 35 L.Ed.2d at 182.
[9] For an excellent discussion of the law in this area, see 46 Notre Dame Law. 349 (Winter, 1971).
[10] W. Blackstone, Commentaries 130.
[11] Walker v. Walker, supra; and 1 St. Marys L.J. 146 (1969).
[12] Reynolds v. Richardson, 483 S.W.2d 747 (Tenn. App. 1971); and Fox v. Hohenshelt, 528 P.2d 1376 (Or. App. 1974).
[1] Fla.App.1st 1972, 266 So.2d 385.
[2] Urga v. State, 1944, 155 Fla. 86, 20 So.2d 685. See also 782.10, Florida Statutes, 1971 and 797.01, Florida Statutes, 1971.
[3] Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
[4] Poe v. Gerstein, United States Court of Appeal, 5th Cir., 517 F.2d 787, Opinion filed August 18, 1975.
[5] Citing Roe v. Wade, supra.
[6] The Supreme Court of Florida in, In re Brock, 1946, 157 Fla. 291, 25 So.2d 659, held that even a minor mother of an illegitimate child could execute a valid consent for the adoption of that child by adoptive parents and that upon the child being adopted the natural parents would be relieved of all duty and obligation due to the child; further holding that the future welfare and training of a child is a matter apart from its property and material rights. Also, in Clements v. Banks, Fla.App.3rd 1964, 159 So.2d 892, our sister court of the Third District held that the father of an illegitimate child has no rights to the child and that his consent to adoption of that child is not necessary, notwithstanding that he had voluntarily supported the child since its birth. See also F.S. 63.062(1).
[7] Rule 1.140, R.C.P.